## LAMOREAUX *v.* ROLFE.

An agreement to draw timber from a lot of land was signed by an agent. A power-of-attorney, dated six months prior to the execution of the agreement, was shown to have been in the hands of the agent; but whether before or after the execution of the agreement the witness could not state. The agent was at the time doing business for his principal in this State; the latter residing in Massachusetts. — *Held,* that the evidence was competent to be submitted to a jury, and from which they might find a delivery of the power before the execution of the agreement.

To recover for the non-performance of a contract to draw timber from a lot of land, it is not necessary, in order to make out a *prima-facie* cause of action, for the plaintiff to show that he is the owner of the land.

The breach of a contract to perform certain services within a specified time is complete upon the arrival of the time to commence the performance, and the absolute refusal ever to fulfil the contract ; and upon such refusal a suit may be instituted, and damages recovered for the non-performance of the whole contract.

After the breach of such a contract, evidence of a subsequent agreement between the plaintiff and third persons, and the amount to be paid for the performance of the same services, but which agreement is never carried out, is not competent as tending to show the amount of damages; otherwise, if the services had been performed under such agreement.

COVENANT broken, upon an agreement dated February 3, 1854.

The defendant made a denial upon the docket of the execution of the agreement declared on, and an affidavit agreeable to the rule of court.

There was sufficient evidence produced to prove that the defendant signed and sealed the agreement declared on, and that it was executed by one Edwin Chase, who professed to act as agent for the plaintiff, by sealing the instrument and signing the plaintiff's name, " James A. Lamoreaux, by Edwin Chase, Ag't." It appeared that one part of the agreement executed in the same name was delivered to the defendent, and one part was retained by said Chase.

The plaintiff introduced a paper dated July 1, 1853, signed and sealed by the plaintiff, and witnessed by E. L. Miller ; and upon making proof that Miller resided out of the State, he gave evidence of the handwriting of the plaintiff, and of the witness thereto. The paper was produced by the plaintiff's counsel, the plaintiff not being present at the trial. George L. Williams, a witness for the plaintiff, testified that the plaintiff resides in Massachusetts ; that Chase acts as plaintiff's agent in a lumbering business carried on at Monroe, N. H., and that he (Williams) has been employed as a clerk for the plaintiff at Monroe for two years ; and that at some time, but when he could not say, he saw said power-of-attorney in the hands of Chase.

Upon this it was objected by the defendant that there was no sufficient proof that the power-of-attorney was made at the time it bears date, nor that it was delivered to Chase before the making of said agreement ; but the court overruled the objection, and the same was read to the jury.

To show that the plaintiff had title to lot No. 65, in the 2d division, in the town of Brunswick, Vermont, evidence was introduced tending to prove that the agent of the plaintiff went upon a lot of land in said Brunswick, called No. 65, two or three times before the agreement was made, and examined the lot with the purpose of buying it, David Hyde being the owner of it. That once, shortly before the 3d day of February, 1854, said agent, with a surveyor, went and marked one line between that and another lot, the agent then claiming the lot for said Lamoreaux ; and that after the 3d day of February the agent and surveyor went upon the lot, and run the lines and

marked the boundaries the rest of the way around the lot, except at one end.

It appeared that on the same day the agreement was made, and before it was signed, the defendant and the plaintiff's agent went upon the land, to examine the timber with a view to making the contract.

The only evidence produced tending to show that the lot so entered upon was lot No. 65, in the 2d division in said Brunswick, was that of witnesses who testified that it was so called by persons acquainted with the lot.

The plaintiff read an agreement made between him and J. D. French and one Hunt, dated March 1, 1854, by which French and Hunt contracted to draw the timber from said lot for a price above the defendant's contract. This paper was introduced to show the damages for the non-fulfilment of the defendant's contract.

The plaintiff gave evidence tending to prove that the defendant, in about a week after the 3d day of February, 1854, upon being applied to by the plaintiff's agent, wholly refused ever to perform the agreement or to draw the timber.

Upon this the court ruled that the extent of damages would be for the non-performance of the whole contract; the defendant contending that he would only be liable in this action for not performing what he might have done between the date of the agreement and the date of the writ.

Upon this a verdict, by consent, was taken for the plaintiff, subject to all exceptions arising upon the case, and judgment to be ordered on the verdict, or a new trial to be ordered, as the Supreme Judicial Court should direct.

*Burns & Fletcher*, for the plaintiff.

*Heywood*, for the defendant.

EASTMAN, J. This case, as sent to us, is imperfect; but we gather from it that the action was founded upon a contract dated February 3, 1854, by which the defendant agreed to draw cer-

tain timber for the plaintiff from lot No. 65, in the 2d division in Brunswick, Vermont. The execution of the agreement by the defendant was proved; but he excepted that the contract was not shown to have been legally executed by the plaintiff, and therefore that the consideration failed.

It appeared that the plaintiff's name was affixed to the contract by one Chase; and the exception was that the power-of-attorney, by which the contract was signed, was not shown to have been delivered before the execution of the agreement by Chase. But we think the evidence was competent to be submitted to the jury, and from which they might find a seasonable delivery of the power. Chase signed the agreement as agent more than six months after the date of the power-of-attorney. He was at the time the acting agent of the plaintiff, and the power-of-attorney was seen in his hands either before or after the execution of the agreement. In the absence of conflicting evidence, a jury might well find a delivery of the power-of-attorney before the date of the agreement; and this exception must be overruled.

*Prima facie,* the evidence introduced was competent to show the plaintiff's right to take the timber from the lot. His agent went upon the lot several times with the owner, with the avowed purpose of purchasing. Subsequently he run out the lines of the lot, and went over it with the defendant, and examined the timber. It was not necessary for the plaintiff to show himself to be the owner of the lot. He may have purchased the timber of Hyde, and thus have had a perfect right to remove it. For the defendant to have succeeded upon this ground, he should at least have produced some evidence of the plaintiff's want of title to the timber. This he did not attempt to do, and he cannot prevail upon this ground.

The rule of damages as laid down by the court was correct. The defendant having absolutely refused to perform the contract, there was no reason why the plaintiff should wait any length of time before prosecuting for the damages. After the refusal to perform the agreement, the plaintiff, if he would have the timber drawn, was obliged to make a new contract with others. He was not required to wait and see if the defendant would not

change his determination. The contract was broken when the defendant absolutely refused to perform; the time to commence the performance, as we understand it, having then arrived: and the breach was then perfect.

But the other exception to the verdict we think must prevail. To show the damages which the plaintiff sustained by the non-fulfilment of the defendant's contract, the plaintiff read in evidence an agreement made between him and French and Hunt, by which they contracted to draw the timber from the lot for a price above that for which the defendant was to draw it.

The value of property may be shown by actual sales of the property itself, or of similar property situated under like circumstances. Such is the settled rule in this State. *Whipple* v. *Walpole*, 10 N. H. 130 ; *Bean* v. *Kirk*, 11 N. H. 397 ; *White* v. *Concord Railroad*, 10 Foster 188.

So an offer to sell property by the owner may be evidence against him, as tending to show that the property was worth no more. *Hersey* v. *Insurance Co.*, 7 Foster 149. It is in the nature of an admission on his part as to its value.

Upon the like principle it is competent to show the price paid for doing certain or similar labor, as tending to prove the value of the labor. And, as against a party, an offer by him to perform the work would be admissible, as showing what it was worth.

But the evidence used upon the trial in this case does not fall within this principle. It does not appear that the work was ever performed by French and Hunt, or that the contract with them was ever carried into effect. The evidence was not used against the party making the contract, but in his favor. It was nothing more than his statement of what he was willing to give to have the lumber drawn, and the agreement of French and Hunt to the same. To admit evidence of this kind would be to open a door to fraud, since it could easily be got up for the occasion. Had the services been performed under the agreement, the evidence would have been competent.

For the admission of this evidence the verdict must be set aside, and a                              *New trial granted.*