Hillsborough, }
    Dec., 1897. }

## SMITH *v.* BANK OF NEW ENGLAND.

Separate claimants having a community of interest against the same defendant may be joined as plaintiffs in a bill in equity, in order to prevent a multiplicity of suits, although each has a plain and adequate remedy at law.

It is not essential to the exercise of jurisdiction by a court of equity to prevent a multiplicity of suits at law, that it should be invoked by the party who would otherwise be subjected to them.

BILL IN EQUITY, in behalf of the plaintiff and all others of like interest, alleging that the plaintiff is the owner of certificates of deposit issued by the Union Trust Company which are indorsed by the defendants in the manner stated below; that on March 29, 1892, it was agreed between the Trust Company, a corporation organized under the laws of Iowa and doing business in that state, and the defendants, that the Trust Company should issue certificates of deposit to an amount to be thereafter fixed and should assign and transfer to the defendants, to be held by them in trust to secure the payment of the certificates, real estate and other securities approved by the defendants to an amount exceeding, at their face value, by ten per cent, the amount of the certificates; that the defendants should thereupon certify upon each of the certificates that its payment was so secured; that the Trust Company might at any time withdraw any of the securities upon substituting others of equal or greater value; that, under and in pursuance of the agreement, the Trust Company issued certificates of deposit to the amount of $69,000, and the defendants certified thereon that, to secure the payment thereof, they held securities of the full value of ten per cent in excess of the amount of the certificates, though they in fact held only 505 shares of bank stock, of the face value of $50,500; that subsequently the Trust Company withdrew the bank stock and substituted other securities, which were accepted and approved by the defendants, of the face value of $91,000, but all of which except 180 shares of bank stock, of the face value of $18,000, were wholly worthless, as the defendants then knew or by due care would have learned; that the defendants neglected to cause the 180 shares of bank stock to be properly transferred to them, in consequence of which, upon a liquidation of the affairs of the bank, the full value of the stock was paid to the Trust Company; that whether the Trust Company paid this money, or any part of it, to the defendants, the plaintiff does not know and prays to be informed; that seventy-eight other persons [whose names and

residences are stated] hold certificates of deposit similar in all respects to those owned by the plaintiff, but that the amount held by each of them and the extent of their respective interests are unknown to the plaintiff and can only be determined upon an accounting; and that the Trust Company is in the hands of a receiver and has no substantial assets.

The prayer of the bill is (1) for an order requiring all persons in like interest to join in the action, or be barred from sharing in the decree; (2) for discovery and an accounting; and (3) for a determination of the damage caused by the defendants' negligence in the management of the trust estate, and a decree that the defendants shall pay the same.

The defendants demurred because (1) the bill is multifarious; (2) the plaintiff has a plain and adequate remedy at law; and (3) the bill is without equity.

*David A. Taggart, Elijah M. Topliff,* and *Van Fossen & Frost* (of Minnesota), for the plaintiff.

*James F. Briggs* and *Oliver E. Branch,* for the defendants.

CARPENTER, C. J.    The bill is not multifarious, nor would it be if all the holders of certificates were in fact made parties to it either as plaintiffs or defendants.    They are all equally and directly interested in the disposition of any trust funds now held by the defendants and in any damages that may be awarded against them for a breach of the trust.    All the matters in controversy relate exclusively to the alleged conduct and misconduct of the defendants as trustees.    It not only appears that by the joinder of all others of like interest with the plaintiff the defendants will not be embarrassed or subjected to any expense or inconvenience in making their defence, nor will any injustice be done them, but that the matters in dispute can be more conveniently, economically, and expeditiously adjusted in one suit.    *Chase* v. *Scarles,* 45 N. H. 511; *Eastman* v. *Bank,* 58 N. H. 421, 422; *Page* v. *Whidden,* 59 N. H. 507, 509.

The prevention of useless litigation and a multiplicity of needless suits is a recognized ground of equity jurisdiction.    It is upon this principle that bills of peace are sustained.    1 Sto. Eq. Jur., s. 853.    The bill may be brought as well by the numerous claimants of the right in question as by him against whom the claim is made.    *Cowper* v. *Clerk,* 3 P. Wms. 155, 157; *Conyers* v. *Abergavenny,* 1 Atk. 285; *Powell* v. *Powis,* 1 Y. & J. 159; *Phillips* v. *Hudson,* L. R. 2 Ch. 243.

The plaintiff's bill is in the nature of a bill of peace.    One of its objects is to obtain an adjudication of the rights of the parties in one suit instead of seventy-nine suits.    For the present pur

pose it may·be assumed ·that the only cause of action disclosed by the bill is for damages caused by the defendants' negligence for which the plaintiff and the other holders of certificates have each a plain and adequate remedy at law. If the parties in interest severally brought actions at law, the question of the defendants' negligence would be exactly the same in all the actions and would necessarily be determined upon the same evidence. Substantially, the damages of the several plaintiffs would be assessed upon the same principle. In each case the same witnesses would have to be called at the same cost. Each trial would consume the same length of time and subject each party to the same expense. For the determination of one issue the public must provide seventy-nine sessions of the court and seventy-nine juries. In short, a single issue, upon which the rights of all parties interested in the controversy depend, must be tried seventy-nine times, and the parties and the public be subjected· to the worse than useless expense of seventy-eight trials.

*Take up*
*Pom. D*°°

The defendants' position that "·the equity jurisdiction of the court to prevent a multiplicity of suits cannot properly be invoked except by the person who may be subjected to them," is supported by no authority and has no foundation in principle. A speedy and inexpensive adjudication of their common right is quite as important to the numerous plaintiffs as to the. single defendant, and it may be much more so. Cases may often happen where a rejection of their application for equitable intervention to prevent a multiplicity of suits would operate practically as a denial of justice. Suppose, *e. g.*, that each of one hundred persons held an interest coupon for six dollars, on bonds issued by a town or other corporation, and that the. only controverted question was the validity ·of the bonds. Each coupon-holder would have a clear and, in a legal sense, an adequate remedy at law. But if he recovered in an action at law he would realize nothing, as the necessary expenses of the suit would exceed the amount recovered. If, on the other hand, the question were determined in one suit, each might realize substantially the amount of his demand. To hold that equity will intervene in behalf of the corporation, but not in behalf of the coupon-holders, to compel the issue to be tried in one suit, would bring deserved reproach upon the administration of justice.

" The weight of authority," says Mr. Pomeroy, " is simply overwhelming that the jurisdiction may and should be exercised, either on. behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, . . . where there is, and because there is, merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body." 1 Pom. Eq. Jur., *s.* 269.

Such would be the doctrine here if there were no authority on the subject. Any reasonably necessary process for conveniently and economically ascertaining rights and furnishing a remedy for their violation may be used. *Webster* v. *Hall*, 60 N. H. 7; *Metcalf* v. *Gilmore*, 59 N. H. 417, 434; *Walker* v. *Walker*, 63 N. H. 321; *Brooks* v. *Howison*, 63 N. H. 382, 388. For the enforcement of the rights of parties our common law provides "the best inventible procedure." *Gage* v. *Gage*, 66 N. H. 282, 294; *Owen* v. *Weston*, 63 N. H. 599, 600, 602.

An order may be made at the trial term (if the defendants desire, or deem it necessary for their protection against other suits) that all the certificate holders who, upon proper notice, fail to appear as plaintiffs on or before the time set for the trial, or other specified time, shall be forever barred from participating in any of the trust funds or in any damages that may be awarded by reason of the defendants' negligence, and from hereafter bringing any action.

The bill may be maintained to avoid a multiplicity of suits. This result makes it unnecessary to consider whether it might be maintained upon other grounds.

*Demurrer overruled.*

PARSONS, J., did not sit : the others concurred.