Hillsborough
No. 78-049
No. 78-050

ARTHUR J. ROYER, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED

v.

THE STATE OF NEW HAMPSHIRE
DEPARTMENT OF EMPLOYMENT SECURITY & a.

October 17, 1978

*New Hampshire Legal Assistance (Raymond J. Kelly* orally), for the plaintiffs.

*Edward F. Smith (Andre J. Barbeau* orally), for the defendants.

PER CURIAM. These unemployment benefit cases present issues concerning the maintenance of class actions in this State and the authority of the department of employment security (DES) to terminate without prior notice and hearing the benefits of initially eligible claimants who have continued to make weekly filings according to RSA 282:3 A and Regulation 13 (1975). Plaintiff Arthur J. Royer was found initially eligible for unemployment benefits on August 22, 1974, and was disqualified indefinitely for benefits on September 27, 1974. On appeal, the decision of the appeal tribunal on October 30, 1974, upholding the disqualification, was overturned by the Hillsborough County Superior Court (*Batchelder*, J.) on October 25, 1976. Defendants excepted to the court's award of eight weeks of benefits and filed an appeal with this court. Subsequently, the benefits were paid and therefore the defendants' exception is overruled.

Mr. Royer, on behalf of himself and the class of others similarly situated, also filed a bill in equity on October 9, 1974, in Hillsborough County Superior Court, seeking a temporary restraining order and a temporary injunction. These prayers were denied by *Bois,* J. However, a motion to dismiss the class action brought against the State was also denied by *Bois,* J. The benefit appeal case and the bill in equity seeking a permanent injunction, declaratory relief, and damages where then heard on a consolidated record in the Hillsborough County Superior Court (*Batchelder,* J.). The trial court allowed the case to proceed as a class action and ruled on statutory and constitutional grounds that unemployment benefits may not be terminated without prior notice and hearing. Defendants' motion for consideration was denied and all questions of law raised by exceptions were reserved and transferred to this court by *Batchelder,* J. For the reasons contained herein, we affirm.

## I.

The defendants argue that plaintiff Royer's claim is moot since he has received all unemployment benefits to which he was entitled. Mootness is not subject to rigid rules, but is a matter of convenience and discretion. *Proctor v. Butler,* 117 N.H. 927, 380 A.2d 673 (1977). Plaintiff raises issues of significant constitutional dimensions; the pressing public interest in those issues and the avoidance of future litigation of the same issues justify a decision on the merits. *Martel v. Hancock,* 115 N.H. 237, 238, 339 A.2d 9, 10 (1975); *O'Neil v. Thomson,* 114 N.H. 155, 159, 316 A.2d 168, 171 (1974). Additionally, this case presents issues that are "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 148 (1975). The challenged action was too short in duration to be fully litigated prior to its expiration, and although plaintiff is now employed, there is a reasonable expectation that he may again be subjected to the challenged action. *Id.* at 149. Because of this ruling on mootness, the class action question need not be considered.

## II.

The trial court correctly found that the practice of the department violates RSA 282:5 B(9), which provides that "It shall be a condition precedent to the cessation of payment of benefits to any individual that he be given an opportunity to appear in person . . . to be heard relative to his continued entitlement to benefits." Although the statute requires that the commissioner promulgate regulations to carry out its mandate, the department has no written directive

requiring certifying officers to talk to initially eligible claimants before terminating benefits, and has no standard procedure for notifying initially eligible claimants before termination of benefits that a specific question has arisen concerning their continued receipt of benefits. Plaintiff Royer and another claimant, Elizabeth Becker, received no written notice to inform them that the department questioned their availability for work (one of the conditions for receiving benefits) until they received the decision terminating their benefits. Further, DES' standard procedure after an initially eligible claimant has been disqualified by a certifying officer is to stop benefits entirely while an appeal is pending before the appeal tribunal. This procedure and its resultant cessation of benefits violate RSA 282:5 B(9). The interview with a certifying officer, which DES provides claimants prior to termination of benefits, does not comport with the requirements of RSA 282:5 B(9), because a claimant receives no prior notice of any specific questions concerning the claimant's continued entitlement of benefits. Additionally, the existing procedures of DES violate RSA 282:5 B(10) (1977), which requires that unemployment benefits found payable by an administrative determination must continue until the decision of a subsequent appellate body finding that benefits are not payable.

### III.

The termination of unemployment benefits without prior notice and hearing also violates the Social Security Act, 42 U.S.C. 503(a)(1) (1970), which requires that the State, to qualify for payment of DES administrative expenses by the federal government, must comply with certain federal requirements. Section 503(a)(1) states that individual State methods of administration must be "reasonably calculated to insure full payment of unemployment compensation when due." The Supreme Court, in an unemployment compensation case, held that the words "when due" meant the time promptly after an initial determination of eligibility. *California Human Resources Dep't v. Java*, 402 U.S. 121 (1971); *Pregent v. New Hampshire Dep't of Empl. Security*, 361 F. Supp. 782 (D.N.H. 1973), *vacated and remanded for determination of mootness*, 417 U.S. 903 (1974).

The department's procedure of summary termination by a certifying officer, on the grounds of a subsequent finding of ineligibility, does not change the concept of when benefits are due. *Pregent*, 361 F. Supp. at 793. The average delay of eight weeks between the last check received prior to termination and the issuance of the first check after the appeal tribunal reverses the termination decision is

not a *de minimis* deprivation of property and highlights the importance of a pretermination due process hearing.

## IV.

The existing procedures for the termination of unemployment benefits also violate the due process clause of the fourteenth amendment to the United States Constitution and part I, article 15 of the New Hampshire Constitution, which provides that no person can be deprived of his liberty or estate but by the judgment of his peers or the "law of the land." "Law of the land" has been consistently interpreted as meaning due process of law. *Petition of Harvey*, 108 N.H. 196, 230 A.2d 757 (1967); *Opinion of the Justices*, 66 N.H. 629, 33 A. 1076 (1891). Unemployment compensation claimants have "the same type of statutorily grounded claim of entitlement to, or property interest in, unemployment compensation benefits that the welfare recipients had in the *Goldberg* case." *Wheeler v. State*, 115 N.H. 347, 341 A.2d 777 (1975), *cert. denied*, 423 U.S. 1075 (1976). Having found that the plaintiff class has a property interest in the continuation of unemployment compensation benefits, the only question remaining is what procedures are due.

The trial court ruled that DES must provide notice and hearing before termination comporting with the following guidelines:

(a) A hearing need not take the form of a judicial or quasi-judicial trial, but the claimant must be provided with timely and adequate notice detailing the reasons for termination, and an effective opportunity to defend by confronting and cross-examining adverse witnesses and by presenting his own arguments and evidence orally before the decision-maker;

(b) Counsel need not be furnished at the pretermination hearing, but the claimant must be allowed to retain an attorney if he so desires;

(c) The decision-maker need not file a full opinion or make formal findings of fact or conclusions of law, but should state in writing the reasons for his determination and indicate the evidence he relied on;

(d) The decision-maker must be impartial, and he shall not have participated in the investigatory or fact-finding stages of the case or in making the determination under review.

The trial court enjoined DES from terminating unemployment benefits without such notice and hearing.

■ The due process provision of the State constitution requires notice and hearing before deprivation of a property interest. *Burgess v. City of Concord*, 118 N.H. 579, 391 A.2d 896 (1978); *Calawa v. Town of Litchfield*, 112 N.H. 263, 296 A.2d 124 (1972). The United States Supreme Court has also set out a balancing test under the due process clause which utilizes three factors:

> the private interest that will be affected by the official action . . . the risk of an erroneous determination of such interest through the procedures used, and the probable value, if any, of the additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The defendants argue that the individual's interest is not particularly strong, because an unemployment compensation claimant has access to private resources and government assistance. General assistance in New Hampshire is not aided by the federal assistance program, but is instead a system of town and county welfare and might not always fill the financial gap of initially eligible unemployed workers whose benefits have been terminated. The defendants also argue that the benefit entitlement of an unemployment compensation claimant is not based upon financial need, comparable to the social security disability recipient in *Mathews*, where a pretermination hearing was not required.

The New Hampshire Legislature has established the purpose of the unemployment compensation system as "the attempt to provide for such distress solely through poor relief not only is inadequate for the need but productive of serious social consequences upon many self-respecting persons. . . ." Preamble for Unemployment Compensation Law, as inserted by RSA ch. 282 (Supp. 1977) Laws 1977, 441:14. The "distress" to which the legislature referred includes "economic insecurity [which] is a serious menace to the health, morals, and welfare of this state." The need for unemployment benefits can be critical; welfare benefits and unemployment compensation are used to fulfill the recipients' needs for the basic necessities of life. Note, *Due Process Requirements in Payment and Termination of Unemployment Compensation Benefits*, 78 Dick. L. Rev. 572, 578 (1973).

■ To lessen the risk of erroneous deprivation, some form of hearing is usually required when a liberty or property interest is at stake; only rarely has the Supreme Court upheld deprivation without such process. *Mathews*, 424 U.S. at 333. The fundamental requisite of due process is the opportunity to be heard, and that opportunity is useless unless one is informed of the matter pending and the hearing is granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). The Court has even considered the risk of erroneous deprivation of utility service through "necessary reliance on computers," and held that the risk of error was "not insubstantial." *Memphis Light, Gas & Water Div. v. Craft*, 98 S. Ct. 1554, 1565 (1978). There, the Court required that some form of notice and hearing be given prior to the termination of utility service.

The trial court found that decisions of certifying officers terminating benefits of initially eligible claimants are frequently reversed by the appeal tribunal or the superior court. Although DES does afford the claimant a counter-interview and occasionally an interview with a certifying officer, claimants do not necessarily receive notice of a specific question that may have arisen concerning their continued receipt of benefits. Unlike the routine medical reports that were the basis of the termination decision in *Mathews*, the possible complexity of factual issues in an unemployment benefits case mandates a pretermination evidentiary hearing to improve the accuracy and fairness of DES termination decisions.

The State's interest is served by providing pretermination notice and hearing, which further provides accuracy and fairness in the unemployment compensation system, and therefore can ease more effectively the economic distress the legislature sought to avoid. Pretermination hearings will probably result in fewer erroneous determinations, and will put money in the hands of unemployed workers to aid them in their search for substantially equivalent employment. *See California Dep't of Human Resources v. Java*, 402 U.S. 121, 132 (1971).

■ Accuracy and fairness are also promoted by affording claimants the opportunity to cross-examine adverse witnesses and to present witnesses and evidence orally. *Greene v. McElroy*, 360 U.S. 474, 496 (1959). Although the State is not required to provide counsel, the private retention of counsel can be invaluable when a claimant cannot effectively present a sometime complicated factual case

before the DES. *See Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974); Bruno, *The Right to Counsel in Civil Contempt Cases*, 16 N.H.B.J. 126 (1974). Finally, an impartial decision-maker and a written statement of reasons are elements of a fair hearing which are traditional and necessary. *Burhoe v. Whaland*, 116 N.H. 222, 356 A.2d 658 (1976); *Soc'y for Protection of N.H. Forests v. Site Evaluation Committee*, 115 N.H. 163, 337 A.2d 778 (1975).

We realize that the required procedures may entail added responsibility and some added cost for the department. However, DES will not lose significant sums in payment to ineligible claimants, because it can recover overpayments by set-off against future benefits or through civil collection actions provided by statute. RSA 282:5 B(10). Excellent percentage rates of recovery have been reported by DES. Also, as the *Pregent* court stated, "Hearings may be accelerated and additional personnel employed. The Department of Employment Security's administrative skill in devising prompt procedures for hearings will largely determine the degree of impact on the public fisc." *Pregent*, 361 F. Supp. at 793. Although the vindication of due process rights may have an impact on the allocation of scarce administrative resources, the claimant's legal right cannot turn upon DES' alleged inability to meet its other obligations. *See Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978). The small increase in administrative time and expense which may result from these additional procedures is far outweighed by the strong interest of unemployed claimants in continued receipt of benefits, by the avoidance of the high risk of erroneous decisions under the current system, and by the benefit of the added protection of pretermination notice and hearing.

We hold that part I, article 15, New Hampshire Constitution, requires pretermination hearings satisfying the requirements of this opinion, and until DES develops procedures, it cannot terminate payment of benefits to a claimant. The case is remanded to the trial judge for any further proceeding consistent with this opinion to ensure that the new procedures developed are in compliance with State constitutional mandates.

*Exceptions overruled; remanded.*

BOIS and BROCK, JJ., did not sit; DOUGLAS, J., concurred separately.

DOUGLAS, J., concurring:

While I concur with the opinion I feel the matter of class actions should be addressed in this case.

The trial court correctly determined that this case is an appropriate class action, and that the class is composed of all present and future initially eligible unemployment compensation claimants. Defendants argue that class actions do not lie in New Hampshire, since there is no statute establishing this type of judicial remedy. I disagree. Class actions, or representative suits, have been recognized by this court for over one hundred years. The class action originated in England in the Court of Chancery as an exception to the equitable rule requiring joinder of all parties necessary to achieve a just result in the case. 3B J. Moore, Federal Practice 23.02 [1] (2d ed. 1978). Class representation in the seventeenth and eighteenth centuries in England was grounded on necessity or convenience. Foster, *The Status of Class Action Litigation*, American Bar Foundation, No. 4, 2–4 (1974).

In the United States, class suits were also permitted on the basis of necessity and convenience. The Supreme Court allowed a representative suit which bound all members of the class, stating, "[f]or convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court." *Smith v. Swormstedt*, 57 U.S. (16 How.) 288, 303 (1853). The leading case in New Hampshire is *Smith v. Bank of New England*, 69 N.H. 254, 45 A. 1082 (1898), in which separate claimants having a community of interest against the same defendant were joined as plaintiffs in a bill in equity. Class representation was permitted to prevent a failure of justice where individual common claims were too small to support separate actions. "Cases may often happen where a rejection of . . . [an] application for equitable intervention to prevent a multiplicity of suits would operate practically as a denial of justice." *Id.* at 256, 45 A. at 1083. This view "voices a concern for the avoidance of the economic infeasibility of multiple actions that could well be emulated by present-day courts." Starrs, *The Consumer Class Action*, 49 B.U.L. Rev. 407, 433 (1969).

In *Textile Workers Union v. Textron, Inc.*, 99 N.H. 385, 111 A.2d 823 (1955), an unincorporated employees' association was permitted to bring an action against the defendant employer to recover back wages owed to former employees and union members. The court reasoned that "it should not force the parties to the costly absurdity of bringing 2700 separate suits where one will suffice." *Textile Workers*, 99 N.H. at 387, 111 A.2d at 824. Citing *Smith v. Bank of New England*, 69 N.H. 254, 45 A. 1082 (1898), the court concluded that justice and convenience required that "one suit be brought to dispose

of many." *Textile Workers, supra* at 387, 111 A.2d at 824. Six years later, in a taxpayers' suit challenging the constitutionality of a legislative mileage statute, this court did not require that the 424 members of the legislature be made parties to the proceeding. Chief Justice Kenison reasoned, "We think that this is a representative suit and that the intervening defendants, individually and in their capacities as the presiding officers of the two branches of the legislature, could and did fairly represent the interests of all legislators. . . ." *Monitor Publishing Co. v. Hill*, 103 N.H. 397, 402, 173 A.2d 725, 727 (1961).

In 1975, the legislature enacted RSA 358-A:10-a, which provides that persons entitled to bring private actions under the consumer protection statute, RSA 358-A:10, can institute representative actions. Later that year, the legislature passed a class action bill (House bill No. 888) which was vetoed by the Governor. Senator Bradley commented favorably on the proposed bill, stating:

> The present law is silent on this. . . . The procedures in this are parallel and comparable to the procedures we just passed in HB 917 with respect to the Consumer Protection Division. That law provided for class actions in that area. This provides for the same kind of procedure generally.

N.H.S. Jour., 29 May 1975, at 949. Although the legislature did not override the veto, its ultimate failure to enact the bill does not prevent the courts from recognizing the validity of a class action. "The legislature expresses its will by enacting laws, not by failing to do so. . . ." *Merrill v. City of Manchester*, 114 N.H. 722, 728, 332 A.2d 378, 382 (1974).

This court's acceptance of representative suits and the legislature's statutory authorization of class actions under the consumer protection statute are indicative of New Hampshire's continued willingness to allow class actions in the interest of justice and convenience. This case presents an ideal opportunity to outline the prerequisites for a class action in this State. The exact form and substance of procedures for instituting and governing class actions, including provisions regarding notice, certification, scope of class, methods of payment of damages, and award of attorneys' fees should be established by superior court rule. RSA 490:4 (Supp. 1977).

The federal class action rule and codification of class action procedures by States has generally expanded class action coverage. *See, e.g.*, Fed. R. Civ. P. 23 (1966); Fed. R. Civ. P. 23 (1938); Uniform Class Actions Act (National Conference of Commissioners on Uniform State Laws, final draft adopted August 5, 1976). Class action

rules in the States are diverse, although a majority of States have adopted amended Federal Rule 23. A few States, including New Hampshire, have common-law procedures. 1 H. Newberg, Class Actions 1210a (1977). Despite the differences among class action rules, statutes, and common-law class action doctrines, there are general prerequisites for all class actions. First, there must be a definable class, consisting of numerous persons whom it would be impractical to join. Second, named plaintiffs or defendants must have claims or defenses typical of those of the represented class, and must adequately represent the unnamed members. Starrs, *supra* at 496. The federal rule and most State variations also require that questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that the class action be a superior method for the fair and efficient adjudication of the controversy. *See* Morrissy, *State Courts as Forums for Class Suits*, 21 Trial Lawyer's Guide 425, 432 (1978); Scher, *Opening State Courts to Class Actions: The Uniform Class Actions Act*, 32 Business Lawyer 75 (1976).

In this case, the class of all present and future initially eligible unemployment compensation claimants delineated by the trial court is definable and consists of numerous persons whom it would be impractical to join. Royer, the named plaintiff, questions the authority of the department to terminate employment benefits without affording him a prior hearing. His claim that both New Hampshire and federal statutory authority and State and federal due process require a prior hearing is typical of the entire class. The claim presents common questions of law and fact which predominate over individual questions. The class is not extremely large and the size of the interest of the named plaintiff is proportionate to the interests of other class members. Thus plaintiff Royer satisfies the requirement of adequate representation. Starrs, *supra* at 500. Plaintiff's action is suitably brought as a class action under the general prerequisites.