Merrimack
No. 81-296

THE STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC. *& a.*

v.

BELKNAP COUNTY *& a.*

July 7, 1982

*Cleveland, Waters & Bass,* of Concord (*Robert T. Clark* on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith,* of Concord (*Gilbert Upton* on the brief and orally), for the defendant Belknap County.

*Gregory H. Smith,* attorney general (*Loretta S. Platt* on the brief and orally), for the defendant State of New Hampshire.

BOIS, J.   These are cross-appeals from a Superior Court (*Temple,* J.) decision requiring Belknap County to enroll certain of its employees in the New Hampshire Retirement System. The principal defendants, Belknap County and the retirement system, challenge the trial court's denial of their respective motions to dismiss as well as the court's certification of the underlying action as a class action. The State Employees' Association, the representative of the plaintiff class of employees, claims that the trial court defined the members of the class too narrowly and provided an inadequate remedy. We affirm the denial of the defendants' motions to dismiss and the granting of class action status. We remand, however, for further proceedings with respect to the size of the plaintiff class and the adequacy of the remedy ordered.

In view of the factual setting of this case, a preliminary discussion of the framework of the New Hampshire Retirement System will be instructive. In 1945, the State legislature enacted a comprehensive bill establishing the State Employees' Retirement System. *See* Laws 1945, ch. 201 (current version at RSA ch. 100-A). The system, which is administered by a board of trustees, RSA 100-A:14 (Supp. 1981),

provides various retirement benefits for State and local governmental employees. *See* RSA 100-A:5 (Supp. 1981), :6 (Supp. 1981), :8, :9 (Supp. 1981), :10 (Supp. 1981).

Under the statutory scheme, "[t]he governing board of any county, city, town . . . or other political subdivision of the state may . . . elect to have its officers and employees become eligible to participate in the retirement system." RSA 100-A:20 I (Supp. 1981). Upon the affirmative decision of any local government to enroll its officers and employees in the system, the board of trustees of the retirement system must set a date for the commencement of the officers' and employees' participation in the system. *Id.* Although membership in the system is optional for those officers and employees hired prior to the effective date of participation, membership is compulsory for those individuals who begin their employment after the effective date of participation. RSA 100-A:22. The system is funded through the contributions of the participating officers and employees and the respective governmental entities employing them. RSA 100-A:24.

Having discussed the general framework of the State retirement system, we now turn to the particular facts of this case. In March 1946, the defendant Belknap County adopted a resolution which provided for the inclusion of its officers and employees in the State retirement system. The board of trustees of the retirement system established July 1, 1946, as the effective date of participation for the officers and employees of the defendant county. Notwithstanding its obligation under the retirement system statute to include all of its new employees in the system, the county enrolled only a handful of employees.

In 1970, Mr. Harry M. Descoteau, the assistant State treasurer, informed the secretary to the Belknap County commissioners that the county's failure to enroll all employees hired since 1946 was in violation of the State retirement system statute. Although Mr. Descoteau instructed the county as to the necessity of enrolling these employees as members of the system, the county disregarded this instruction.

Seven years later, as a result of the county's continued failure to act, Mr. Descoteau ordered the county to enroll all qualifying full-time employees immediately and to offer each employee credit for the extent of any service between 1946 and the effective date of enrollment. Once again, the county failed to comply with the order in a satisfactory manner. Instead of enrolling all full-time employees hired after 1946, and offering them credit for past service, the county advised its then current employees that they could choose, but were not required, to join the retirement system. While

approximately fifty percent of the employees decided to join the system, they received no credit for their past service. After July 1977, however, all new employees automatically became members of the system.

The State Employees' Association was certified as the bargaining agent for various Belknap County employees in late 1977. Shortly thereafter, the association learned of the county's failure to comply fully with Mr. Descoteau's outstanding order. The association requested that the county provide all of its employees with full credit for their past service, but the county did not heed this request.

In 1980, the State Employees' Association and three employees of Belknap County filed a petition in the superior court for a declaratory judgment. The petition essentially sought three determinations by the court: first, that the plaintiffs could maintain the action as a class action, with the appropriate class consisting of all employees of Belknap County who were hired after 1946 and who were not enrolled as members of the retirement system; next, that the State retirement system and its trustees were obligated to ensure that the county enroll all members of the stated class and give each member full credit for any past service; and finally, that the county was required to pay both its share and the employees' share of the respective contributions which should have been made during the period of non-compliance.

The defendant county filed two motions to dismiss and a demurrer, claiming that sovereign immunity, laches, and the expiration of the statute of limitations barred the action. In the alternative, the county claimed that the case was not suitable for class action status and that the employees should have been required to bring suit in their individual capacities. The defendant New Hampshire Retirement System also filed a motion to dismiss. It contended that it was immune from suit and that it lacked the authority to compel the county to implement the retirement plan.

The trial court rejected the defendants' contentions and denied the motions to dismiss as well as the demurrer. Although the court permitted the employees' association to maintain a class action, it limited membership in the class to only those employees of Belknap County who were in service at the time the petition was filed in 1980, and who were otherwise eligible to join the retirement system. The court ruled that the State Employees' Association and the three named plaintiffs were the proper class representatives.

In addition, the court ordered the county to permit the members of the employee class to "buy-back" all prior years of creditable service. Under this provision of the order, the county was required

to pay its share of the accrued unfunded liability for the members' past years of service, while the employees who elected to "buy-back" their years of creditable service were required to pay an amount equal to the amount of the contributions that they would have provided during the period of the county's noncompliance. Finally, the court ordered the State retirement system and its trustees to ensure that the county properly enroll the members of the employee class.

On this appeal, the defendants first argue that the trial court erred in rejecting their claims concerning sovereign immunity, laches, and the running of the statute of limitations.

■ Sovereign immunity remains an operative doctrine in this State. *See Dunaisky v. State*, 122 N.H. 280, 282, 444 A.2d 532, 534 (1982); RSA 99-D:1 (Supp. 1981). Nevertheless, we have recognized that the State may waive its immunity. *Dunaisky v. State*, 122 N.H. at 282, 444 A.2d at 534; *Sousa v. State*, 115 N.H. 340, 344, 341 A.2d 282, 285 (1975). In *Chasse v. Banas*, 119 N.H. 93, 399 A.2d 608 (1979), we stated that "[a] waiver will exist 'if the legislature has provided for it by statute either expressly or by reasonable implication.'" *Id.* at 96, 399 A.2d at 610 (quoting *Public Service Co. v. State*, 102 N.H. 54, 56, 149 A.2d 874, 876 (1959)). We held in *Chasse* that a statute establishing rights for certain mentally ill patients impliedly permitted such individuals to sue the State for any infringement of their rights. 119 N.H. at 97, 399 A.2d at 610.

The statute at issue in the instant case, RSA ch. 100-A, clearly entitles certain governmental employees to receive retirement and other related benefits. *See* RSA 100-A:23 (Supp. 1981). These benefits constitute a substantial part of an employee's compensation and become vested upon the commencement of permanent employee status. *Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 602, 392 A.2d 1193, 1196 (1978); *see* RSA 100-A:3 (state employees obtain permanent employee status after six months' service). *See generally Fowler v. Fowler*, 116 N.H. 446, 448, 362 A.2d 204, 205 (1976). Designed to attract competent individuals into government service, the benefits are essentially created for the protection of the employee and his family. *Id.*, 362 A.2d at 205.

■■ After considering the unqualified provisions for the payment of benefits as well as the significant nature of such benefits, we conclude that RSA ch. 100-A provides all eligible governmental employees with an enforceable right to benefits. Because the existence of a right to receive retirement benefits implies the existence of an appropriate remedy for recovering these benefits, *Chasse v. Banas*, 119 N.H. at 96, 399 A.2d at 610, we hold

that the trial court properly ruled that the retirement system statute contains an implicit waiver of sovereign immunity.

We also hold that the trial court correctly determined that the six-year statute of limitations, RSA 508:4 I (Supp. 1981), and the equitable defense of laches did not preclude all claims concerning the county's noncompliance prior to 1974. Initially, we note that benefits are payable only upon the death or retirement of a qualifying employee; they are not payable prior to these events. *See* RSA 100-A:5 (Supp. 1981), :6 (Supp. 1981), :8, :9 (Supp. 1981). Although employees obtain a vested right to benefits upon the commencement of their permanent employee status, the statute of limitations does not begin to run until the time that the payments become due—the time of death or retirement. *Abbott v. City of Los Angeles*, 50 Cal. 2d 438, 462–63, 326 P.2d 484, 499 (1958); *see* 4 CORBIN ON CONTRACTS § 989, at 966–67 (1951); *cf. General Theraphysical, Inc. v. Dupuis*, 118 N.H. 277, 279, 385 A.2d 227, 228 (1978); *Blanchard v. Calderwood*, 110 N.H. 29, 35, 260 A.2d 118, 122 (1969). Thus, the six-year statute of limitations would bar only the actions of employees whose suits were not commenced within six years after their death or retirement.

◼ The trial court, moreover, correctly ruled that the period during which suit was permissible was not limited exclusively to the six-year period following each employee's death or retirement. As a result of the county's breach of its continuing obligations to enroll eligible employees in the retirement system and to make the requisite contributions, the employees could have elected, consistent with the doctrine of anticipatory breach, to sue the county at any time prior to their respective deaths or retirements. *See* 11 WILLISTON ON CONTRACTS § 1301, at 78–79 (3d ed. 1968); 4 CORBIN ON CONTRACTS §§ 959, 960, at 852–53, 856 (1951); *see also Beaudoin v. State*, 113 N.H. 559, 562, 311 A.2d 310, 313 (1973); *cf. Lamoreaux v. Rolfe*, 36 N.H. 33, 36–37 (1857).

◼ In determining whether to apply the doctrine of laches, most courts will look for guidance to the analogous statute of limitations. *Cote v. Cote*, 94 N.H. 372, 374, 54 A.2d 360, 362 (1947). When an action is brought within the limitations period, laches will present a bar only if the delay in bringing suit was unreasonable and prejudicial to the defendant. *See id.* at 374–75, 54 A.2d at 362.

◼ Even assuming *arguendo* that the delay in this case was unreasonable, we find that the defendants have failed to prove that they have suffered any prejudice. The county had an absolute and unambiguous obligation under RSA ch. 100-A to enroll all employees hired after 1946. The employees' failure to sue at the

outset did not alter the county's responsibility. In addition, any knowledge by the employees of their rights during the thirty-four-year period of noncompliance was inconsequential to the county's statutory obligation. Thus, no prejudice would result even if, as the defendant retirement system claims, the delay precluded it from making a meaningful inquiry into the employees' knowledge of their rights.

The defendant retirement system next argues that the court improperly framed the employees' suit as a class action. It contends that neither the statutory provisions, nor the common law of this State, permit the maintenance of class actions in cases outside the consumer protection area.

■■ We disagree with this argument. We have long held that "[t]he prevention of useless litigation and a multiplicity of needless suits is a recognized ground of equity jurisdiction." *Smith v. Bank*, 69 N.H. 254, 255, 45 A. 1082, 1082 (1897); *see Allbee v. Elms*, 93 N.H. 202, 203, 37 A.2d 790, 791 (1944). Additionally, this court has recognized the validity of representative suits on several occasions. *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 681, 394 A.2d 828, 833 (1978) (Douglas, J., concurring); *see, e.g., Monitor Publishing Co. v. Hill*, 103 N.H. 397, 402, 173 A.2d 725, 727 (1961); *Textile Workers Union v. Textron*, 99 N.H. 385, 387, 111 A.2d 823, 824 (1955). In permitting representative suits and multiparty joinder, we have emphasized that justice and administrative convenience often warrant the implementation of extraordinary procedural devices. *Id.*, 111 A.2d at 824; *Smith v. Bank*, 69 N.H. at 255, 45 A. at 1082. Consistent with this rationale, we hold that the class action constitutes a viable procedural device in this State.

■ Most jurisdictions have recognized certain general prerequisites for all class actions. *Royer v. State Dep't of Empl. Security*, 118 N.H. at 683, 394 A.2d at 834 (Douglas, J., concurring). First, there must be a definable class which is so numerous that joinder of all members would be impracticable. Second, the representative parties must have claims or defenses which typify the claims or defenses of all members of the class, and the representatives must fairly and adequately protect the interests of the class. Third, questions of law or fact common to the class must predominate over questions affecting individual members. Finally, the class action must be superior to all other available means for adjudicating the dispute. *See Prerequisites for a Class Action*, 3 ALI–ABA COURSE MATERIALS J. 63, 65–70 (1978); Homburger, *State Class Actions and the Federal Rule*, 71 COLUM. L. REV. 609, 631 (1971). *See generally* H. NEWBERG, CLASS ACTIONS §§ 1200–90,

at 293–370 (1977). While adopting these general prerequisites, we urge the superior court, pursuant to its rulemaking authority, to establish further provisions regarding notice, requests for exclusion, execution of judgments, and attorneys' fees.

■ After reviewing the pleadings in this case, we hold that the suit satisfied the four prerequisites for a class action. The plaintiff employees were members of a large and identifiable class, and their interests could be adequately protected in a class action. In addition, all of the matters in dispute related to the propriety of the defendants' conduct, and the class action was the most judicially economical and just method for resolving this issue. The trial court thus properly ruled that the case was suitable for class action status.

■ In its final argument, the defendant retirement system contends that the trial court had no authority in this declaratory judgment proceeding to issue a remedial order requiring affirmative action by the defendants. This argument is correct from a procedural standpoint because RSA 491:22 (declaratory judgments) grants the superior court only the authority to declare the rights and obligations of litigants. Nevertheless, a dismissal based on the defendant's argument would be counterproductive; it would merely foster additional litigation upon the filing of revised pleadings. For this reason, we hold that the plaintiffs should be allowed to amend their pleadings on remand in order to make them consistent with the relief granted.

We now address the claims of the State Employees' Association. As previously noted, the association argues that the trial court erred in declaring the appropriate class to include only those employees who were in service at the time of the filing of the petition in 1980. The association contends that the proper class consists of all Belknap County employees hired after July 1, 1946, who were not enrolled as members of the system.

■ ■ In defining the scope of the proper class, courts consider numerous factors, including the identifiability and manageability of the class, the standing of the members, the existence of any statute of limitations difficulties, as well as the similarity of the issues raised and the relief sought. *See* 1 H. NEWBERG, *supra* §§ 1032a, 1032b, 1040, at 75, 80–81, 83–84; *see, e.g., Philadelphia Electric Co. v. Anaconda American Brass. Co.*, 43 F.R.D. 452, 461–62 (E.D. Pa. 1968). We have already stated that the statute of limitations bars the claims of those employees whose suits were not commenced within six years of their death or retirement. Because the petition in this case was filed in 1980, any employee who died or retired prior

to 1974 should be excluded from the class. Additionally, the class should not include former employees who would have been ineligible for benefits (i.e., those who resigned or were terminated prior to retirement). Subject to these two limitations, however, we hold that the class proposed by the association satisfied the requirements for identifiability, manageability, standing, and similarity of claims.

The trial court's decision to limit the plaintiff class to only those qualifying employees holding positions in 1980 was based primarily on the provisions of RSA 100-A:3 which effectively restrict membership in the retirement system to current employees. The trial court reasoned that qualifying retired employees and the beneficiaries of qualifying deceased employees should be excluded from the class because they are not current employees. We do not accept this reasoning because the trial court has misconstrued the substantive nature of the relief sought by the excluded individuals. These individuals seek compensation for past wrongs committed by the defendants; they do not seek to become present members of the system. Like all other eligible employees, the eligible excluded employees and their beneficiaries had an enforceable right to receive benefits. We hold that it would be inequitable to bar these individuals from enforcing their rights simply because of changes in their employment status.

The trial court also relied on RSA 100-A:25 in limiting the size of the plaintiff class. This section states that the retirement system shall not be liable for the payment of benefits to employees or beneficiaries of deceased employees for whom contributions were never received. The trial court ruled that the recovery of benefits by the excluded individuals would violate the policy of this section by making the retirement system liable to employees for whom contributions were never made. We do not agree. First, from a practical viewpoint, the underlying liability in this case is the liability of the defendant county, not the defendant retirement system. In addition, the remedy provided by the trial court expressly provides for contributions, albeit tardy, by the county and the employees. The remedy, therefore, is consistent with RSA 100-A:25 because it would not impose liability on the retirement system until the requisite contributions were made. Consequently, we conclude that the trial court's reliance on RSA 100-A:25 and RSA 100-A:3 was misplaced. We hold that the court should have extended the plaintiff class to include all eligible employees whose service terminated subsequent to 1974.

The employees' association also challenges the adequacy of the

remedy provided by the trial court. It claims that the court should have required the defendant county to pay the employees' share of the contributions owing during the period of noncompliance.

■ We reject this argument. The remedial provisions requiring the county to pay its share of the unfunded contributions and permitting the eligible employees to "buy-back" all prior years of creditable service were fair and reasonable. We hold that an order requiring the county to pay for the employees' share of contributions would have produced an unduly harsh effect on the taxpayers of the county as well as on the current and future employees who must fund the system. In addition, we note that the "buy-back" provisions were optional in nature and did not require nonconsenting employees to expend any funds.

Although we find the "buy-back" provisions unobjectionable, we are concerned about the adequacy of the remedy with respect to those eligible employees who would have desired to join the system but are now financially incapable of "buying-back" their prior years of service. These employees have clearly sustained an injury as a result of the defendants' failure to enroll them in the system, and they have a right to appropriate relief.

■ On remand, the trial court should ensure that the interests of the financially strapped employees are properly protected. While the trial court should use its discretion in determining the appropriate relief for these employees, it might consider requiring the county to pay these employees outright a sum equivalent to the amount of the contributions which the county should have made for each such employee.

■ In its final argument, the employees' association claims that the trial court should have permitted further factual development of the case prior to the issuance of the disputed remedial order. Contrary to this argument, we find that the pleadings, motions, objections, memoranda, and hearing provided the trial court with sufficient information on which to base its decision. Nevertheless, because of the equitable nature of these proceedings, we will allow the parties to raise any pertinent additional facts on remand.

In conclusion, we remand for purposes of enlarging the plaintiff class and providing appropriate relief for any eligible employees who lack sufficient funds to "buy-back" their prior creditable years of service. The trial court should ensure that the interests of the new members of the class and the financially strapped members are fairly and adequately protected by the class representatives. This undertaking may of course require the selection of additional class representatives. Finally, the plaintiffs should be permitted to

amend their pleadings, and all parties should be given an opportunity to present any additional facts which may have a bearing on the trial court's ultimate decision.

*Defendants' exceptions overruled; plaintiffs' exceptions sustained in part; remanded.*

All concurred.