Board of Trust Company Incorporation
Nos. 80-181
    80-182
    80-183
    80-184
    80-185

APPEAL OF THE PORTSMOUTH TRUST COMPANY
APPEAL OF THE PISCATAQUA SAVINGS BANK
APPEAL OF THE FIRST NATIONAL BANK OF PORTSMOUTH
APPEAL OF THE PORTSMOUTH COOPERATIVE BANK
APPEAL OF THE PORTSMOUTH SAVINGS BANK

(Board of Trust Company Incorporation)

November 26, 1980

*Griffin, Harrington, Brigham & Ritzo,* of Portsmouth (*William F. Harrington* orally), for The Portsmouth Trust Company.

*Griffin, Harrington, Brigham & Ritzo,* of Portsmouth (*Charles J. Griffin* orally), for The Piscataqua Savings Bank.

*Boynton, Waldron, Dill, Aeschliman, Doleac & Woodman,* of Portsmouth (*Jeremy R. Waldron* orally), for The First National Bank of Portsmouth.

*Boynton, Waldron, Dill, Aeschliman, Doleac & Woodman,* of Portsmouth (*Wyman P. Boynton* orally), for The Portsmouth Cooperative Bank.

*Maurice J. Murphy, Jr.,* of Portsmouth, by brief and orally, for The Portsmouth Savings Bank.

*Gregory H. Smith,* acting attorney general (*James E. Townsend,* assistant attorney general, orally), for the Board of Trust Company Incorporation.

*Gallagher, Callahan & Gartrell,* of Concord (*W. John Funk* orally), for the New Hampshire Savings Bank.

KING, J.    The central issue in this case is whether the proceedings of the Board of Trust Company Incorporation concerning the application of the New Hampshire Savings Bank to open a branch office in Portsmouth violated the due process rights of the plaintiff banks in that the board denied these plaintiff banks access to the confidential report of a bank examiner. A second issue is whether the board's refusal to make certain findings of fact and rulings of law, as the plaintiffs requested, violated the provisions of RSA 384-B:2 IV. We hold that the board's refusal to allow the plaintiffs access to the bank examiner's report denied them due process of law and that the board's refusal to make specific findings violated RSA 384-B:2 IV.

On July 2, 1979, the New Hampshire Savings Bank filed with the New Hampshire Banking Department an application to establish a branch office at 767 Islington Street in Portsmouth, New Hampshire, pursuant to RSA ch. 384-B. The Portsmouth Trust Company, The Piscataqua Savings Bank, The Portsmouth Cooperative Bank, The First National Bank of Portsmouth, The Portsmouth Savings Bank, and The Indian Head National Bank all filed objections to the application. An examiner for the department conducted an investigation of the application during the period of August 9, 1979, to September 1, 1979, and filed a confidential report with the department on September 28, 1979. The department referred the application and report to the board pursuant to RSA 384-B:2 III (Supp. 1979).

The board held public hearings concerning the application on December 13, 1979, and January 8, 1980. Both the New Hampshire Savings Bank and the protesting banks introduced testimony and exhibits at these hearings. The board, however, denied the protesting banks' motion to examine the confidential report of the examiner and the confidential portion of the application. On February 27, 1980, the board granted the application of the New Hampshire Savings Bank and denied the motion of the protesting banks· for specific findings of fact and rulings of law.

The protesting banks filed motions for rehearing pursuant to RSA 541:3, which the board denied. The plaintiffs then filed their

appeals with this court pursuant to RSA 541:6. Of the six protesting banks, only The Indian Head National Bank has not joined in this appeal.

■ Before proceeding to an examination of the plaintiffs' due process claims, we must consider whether the bank commissioner had authority to make the examiner's report confidential in the first place. The plaintiffs properly note that, although the statute regulating the branch bank application process does authorize the commissioner to investigate applications, it does not vest the commissioner with the authority to make the results of such investigations confidential. RSA 384-B:2 III (Supp. 1979). This omission is not crucial; however, because RSA 383:10-b provides that "[a]ll records of investigations and reports of examinations" shall be confidential unless the commissioner, in his discretion, determines that "the ends of justice and the public advantage" require otherwise. Because RSA ch. 383 relates to the powers and duties of the commissioner generally, other chapters of the State's banking laws must be construed consistently with its provisions whenever it is possible and reasonable to do so. Accordingly, we hold that RSA 383:10-b empowers the commissioner to make reports of the bank examiner confidential and now turn to a consideration of the constitutionality of that statute.

■ The State Constitution provides that no person shall be deprived of his life, liberty or property except in accordance with the "law of the land." N.H. CONST. pt. 1, art. 15. "Law of the land" has been consistently construed to mean due process of law. *Petition of Harvey*, 108 N.H. 196, 198, 230 A.2d 757, 758 (1967); *Opinion of the Justices*, 66 N.H. 629, 633, 33 A. 1076, 1078 (1891). Whether particular governmental procedures are sufficient to satisfy the requirements of due process involves a bifurcated analysis. First, it must be determined whether the challenged procedures concern a legally protected interest. *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). Second, it must be determined whether the procedures afford the appropriate procedural safeguards. *See id.* at 84–85; *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 677, 394 A.2d 828, 830 (1978).

■ The plaintiffs, as validly chartered banks, have a legally protected right to engage in the business of banking. *See Frost v. Corporation Commission*, 278 U.S. 515, 521 (1929). While it is of course true that a bank charter does not entitle the plaintiffs to a right to be free from competition, *see Appeal of the Incorporators*

*of the Manchester Savings Bank,* 120 N.H. 129, 136, 412 A.2d 421, 426 (1980); *Valley Bank v. State,* 115 N.H. 151, 154, 335 A.2d 652, 653 (1975), a bank charter does create a right to be free from *unlawful* competition, *see Frost v. Corporation Commission, supra* at 521; *Webster Groves Trust Company v. Saxon,* 370 F.2d 381, 388 (8th Cir. 1966); *National Bank of Detroit v. Wayne Oakland Bank,* 252 F.2d 537, 544 (6th Cir.), *cert. denied,* 358 U.S. 830 (1958). It follows that the Board of Trust Company Incorporation may not grant an application to open a branch bank without affording due process to affected banks that may wish to challenge the application. *Cf. Union Fidelity Life Ins. Co. v. Whaland,* 114 N.H. 832, 834, 330 A.2d 782, 783 (1974).

In considering the procedural components of due process required in a particular case, the United States Supreme Court has considered the following three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The private interest involved here is substantial. The evidence submitted to the board clearly demonstrates that the Portsmouth area already supports a number of banks. There were claims that at least one bank faced a very serious threat of financial difficulty if the New Hampshire Savings Bank established a branch office in Portsmouth. All of the banks stand to lose a substantial amount of business should the branch be opened.

The procedures set forth in RSA 384-B:2 III (Supp. 1979) are inherently risky. The decision of whether to grant a branch bank application is left to a board consisting of three members who must rely upon the applicant and the bank examiner's report for much of its information. Although the board is empowered to grant a hearing, the decision to hold a hearing in a particular case purports to be discretionary. RSA 384-B:2 III (Supp. 1979). It is true, of course, that the board must publish notice of the application and that any interested person may file objections to the application. But because much of the information contained in the application and the entire bank examiner's report is confi-

dential, the ability of objecting banks to raise questions concerning the application and to expose errors is severely curtailed. The plaintiffs contest only the decision of the board to deny them access to the confidential information upon which the board's decision would be based in part.

■ The fundamental requisite of due process is the right to be heard at a meaningful time and in a meaningful manner. *Royer v. State Dep't of Empl. Security*, 118 N.H. at 679, 394 A.2d at 831; *see Society for Protection of N.H. Forests v. Site Evaluation Comm.*, 115 N.H. 163, 168, 337 A.2d 778, 783 (1975). The right to be heard is grounded in the need for confrontation when adjudicative rights are in dispute. *See Bedford Bank v. State*, 116 N.H. 649, 651, 365 A.2d 734, 735–36 (1976). Banks such as the plaintiffs, however, cannot possibly present their objections in a meaningful manner where much of the information available to the board and upon which the board will act is secret. It is clear, therefore, that granting protesting banks access to all the information presented to the board will further the fact-finding process and reduce the risk of error.

Making all the information at the disposal of the board available to protesting banks imposes neither a substantial fiscal nor a substantial administrative burden on the board. The only likely interest of the board in maintaining confidentiality is to encourage applicant banks to be open and honest in their applications. This objective is met by the requirement that applications be made under oath. *See* RSA 384-B:2 III (Supp. 1979). It should be stressed that nothing in this opinion requires the board to make all of the information available to the general public. Under the Right-to-Know Law, RSA 91-A:5 IV, confidential commercial or financial information is not a record available to the public.

■ After considering each of the factors set out above, we conclude that justice requires that the board reveal to the protesting banks the evidence obtained through its investigation and upon which it will act in order that such banks may have an opportunity to challenge that evidence. *See Paras v. Portsmouth*, 115 N.H. 63, 69, 335 A.2d 304, 309 (1975). RSA 384-B:2 III (Supp. 1979) provides that interested parties may file written objections to branch bank applications. Because the need for a full hearing is not an issue in this case, we assume without deciding that the opportunity to review the confidential material and to respond through written memoranda satisfies due process. *See Society for Protection of N.H. Forests v. Site Evaluation Comm., supra* at 168–69, 337 A.2d 783–84.

■  The plaintiffs also appeal the refusal of the board to make specific findings of fact and rulings of law. RSA 384-B:2 IV requires the board to take into "consideration" the following five factors:

> "(a) The convenience, needs and welfare of the communities and the area concerned; (b) the financial history and condition of the bank or banks concerned including the adequacy of its or their capital funds; (c) its or their prospects; (d) the character of the management; and (e) whether or not the effect of granting the application would be to expand the size of the bank and extent of its business beyond limits consistent with adequate and sound banking, the public interest and the preservation of competition in the field of banking."

*See Hanrahan v. City of Portsmouth,* 119 N.H. 944, 947, 409 A.2d 1336, 1338–39 (1979). Although the defendant bank properly notes that the statute does not explicitly require the board to make findings concerning any of these factors, such a requirement is implicit in the direction to consider these factors. Otherwise, there is no means by which a reviewing court can determine whether the board complied with the statute and considered each of the enumerated factors, or whether the evidence sustains the board's ultimate determination. *Colburn v. Personnel Commission,* 118 N.H. 60, 65, 382 A.2d 907, 910 (1978); *Scarborough v. Arnold,* 117 N.H. 803, 806, 379 A.2d 790, 793 (1977).

■ ■  The board's findings in this case consisted of a simple positive restatement of each of the statutory factors. The findings do not disclose the basis for the board's decision and so are not helpful. *See Scarborough v. Arnold, supra* at 806, 379 A.2d at 793. It is not this court's function to comb lengthy and detailed administrative records in search of evidence which would support an administrative finding. *See Vickerry Realty Trust Co. v. City of Nashua,* 116 N.H. 536, 540, 364 A.2d 626, 629 (1976). Rather, the administrative agency must include specific, although not excessively detailed, basic findings in support of the ultimate conclusions which in turn support the action of the administrative agency. *See Colburn v. Personnel Commission, supra* at 65, 382 A.2d at 910. We note that in *Hampton Nat'l Bank v. State,* 114 N.H. 38, 44, 314 A.2d 668, 673 (1974), we stated that the mere fact that the board's findings were couched in terms of the statute did

not "affect their character as basic findings." We today withdraw from that position.

The plaintiffs also question whether the decision of the board to grant the application of the New Hampshire Savings Bank was supported by the evidence and in accordance with the law. As our decision today requires a remand of this case to the board, where a different factual record may be developed and a different result may or may not be reached, we need not consider these arguments.

*Reversed and remanded.*

All concurred.