Public Utilities Commission
No. 80-384

APPEAL OF THE CITY OF NASHUA
(New Hampshire Public Utilities Commission)

October 7, 1981

*H. Philip Howorth*, corporation counsel, by brief and orally, for the City of Nashua.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*John B. Pendleton* on the brief and orally), for Pennichuck Water Works.

KING, C.J.   The City of Nashua (the city) appeals from an order of the public utilities commission allowing Pennichuck Water Works (Pennichuck) to remove from the rate base 1,490 acres of land at historical cost. We affirm.

For over fifty years, Pennichuck has owned a large amount of land in Nashua and elsewhere for the purpose of protecting its watershed. With the advent of the Federal Clean Water Act, and a significant additional demand for its water, Pennichuck decided to build a new treatment plant which would provide additional treatment capacity and a higher level of water quality. This twenty-million-gallon-per-day filtration plant cost $7,604,084 and was placed in operation on or before July 31, 1980. The cost of the plant was added to the rate base without adjustment.

After the new plant was in service, Pennichuck determined that some 1,490 acres of land, formerly used for the protection of its watershed, was no longer used and useful in its public utility operations. Accordingly, it sought permission from the public utilities commission to remove that land from the rate base. On July 23, 1980, Pennichuck filed with the commission a memorandum of law and fact taking the position that the land should be removed from the rate base at its historical cost in accordance with the commission's Uniform Classification of Accounts for Water Utilities. The city filed a memorandum in opposition to Pennichuck's position and argued that the land should be removed from the rate base at its fair market value.

On August 1, 1980, the commission issued a Report and Order No. 14,409 in which it allowed the removal from the rate base of the 1,490 acres of land at historical cost. On the same day, the commission issued its Order No. 14,406 setting the appropriate rates and declining to make or require any further adjustments in Pennichuck's rate base or surplus, or to impose any limitations on revenues as a result of the removal of the land. The city's motion for a rehearing was denied, and the city appeals pursuant to RSA 541:6.

While the fair market value of the land is disputed, it is conceded by the parties that the value of the land is considerably in excess of $20 per acre. Because the commission determined that the land should be removed from the rate base at historical cost, it

declined to hear evidence on the fair market value.

The city acknowledges that the accounting rules require that the land be removed from the rate base at historical cost but argues that the case is unusual because the land had enjoyed a phenomenal increase in value, because the rate base doubled as the net result of the removal of the land from the rate base and the inclusion of the treatment plant in the rate base, and because the removal of the land from the rate base at cost would result in the rate-payers being denied any participation in the benefits of the increased value of the land.

■ The law of this State is well settled that an administrative agency must follow its own rules and regulations. *Colburn v. Personnel Commission*, 118 N.H. 60, 63, 382 A.2d 907, 909 (1978); *see Hunt v. Personnel Comm'n*, 115 N.H. 713, 716–17, 349 A.2d 605, 607–08 (1975). The Uniform Classification of Accounts for Water Utilities was adopted by order of the commission dated December 30, 1929, and is still in effect. That order was adopted pursuant to P.L. 240, § 7 (now RSA 374:8), which granted the commission the authority to establish a system of accounts and records to be used by public utilities in their business within the State. *See Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 433 A.2d 1291 (1981).

■ A review of the Uniform Classification of Accounts reveals that the accounting rules require that the land be included in the rate base at cost and that, upon its retirement from service, it be withdrawn from the rate base and transferred to the non-operating assets account at cost. The rules require that the Fixed Capital Water Account "shall include the *cost* of property ordinarily having a life or service of more than one year which is reasonably requisite for use in the conduct of the utility's water operations." The section entitled "Retirement of Fixed Capital" provides in part:

> "When any non-depreciable item of Fixed Capital having an indefinite life is disposed of or abandoned, the *book cost* of such item shall be credited to the appropriate Fixed Capital account. Any difference between book cost, less any amount set aside for the amortization of such item, and the amount realized at disposition shall be carried to account 271-Earned Surplus."

(Emphasis added.) Furthermore, once property is taken out of service for water operations, it must be transferred to the non-operating property account, which "include[s] the *cost* of physical

property other than that used in connection with the several operating departments." A review of the above provisions reveals that the accounting rules required that the land be included in the rate base at cost and that, upon its retirement from service, it be withdrawn from the rate base and transferred to the non-operating assets account at cost.

Notwithstanding the clear language of the accounting rules, the city contends that the decision of the commission to remove the land from the rate base at its historical cost rather than its current fair market value is unlawful, unjust, and unreasonable. We disagree.

■ This court has previously upheld the application of the commission's accounting rules in two cases involving the sale of a capital asset. In *Pennichuck Water Works v. State*, 103 N.H. 49, 53, 164 A.2d 669, 672 (1960), *overruled on other grounds, Appeal of Pennichuck Water Works*, 120 N.H. 562, 565, 419 A.2d 1080, 1082 (1980), and *Chicopee Mfg. Co. v. Company*, 98 N.H. 5, 13–14, 93 A.2d 820, 826 (1953), we stated that under the commission's accounting rules and as a "matter of general equity," the profits realized from the sale of fixed capital belong to the stockholders rather than the ratepayers because any loss realized from the sale of such assets could not be charged to future consumers. We continue to adhere to these rulings.

The city argues that it is unfair to allow Pennichuck to retain whatever profits it will realize upon the eventual sale of the property, in the event there is such a sale, because the utility has already realized a reasonable rate of return on its investment over the years and would realize a windfall from the retention of the profits from a later sale. The city overlooks the fact, however, that RSA 378:2, RSA 378:7 and the commission's accounting rules require that the rates charged shall be sufficient to yield not less than a "just and reasonable rate of return on the *cost* of property of the utility used and useful in the public service. . . ." It would be manifestly unfair and unjust to reduce the utility's rate base by the current market value of the land withdrawn from the rate base when it has been included only at its historical cost. Inclusion at the lower cost figure has resulted in a benefit to consumers, because using the current market value of the land could have required an increase in rates in order to yield a "reasonable return" on investment. It is true, as the city contends, that Pennichuck has received a "reasonable return" on its investment, but this return is for the use of the land in its operations and in no way reflected the increasing value of the land.

We have considered the city's arguments with respect to what it terms the special nature of the case and conclude that they are insufficient to allow the commission to deviate from its rules.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.