Board of Trust Company Incorporation
Nos. 81-237
 81-238
 81-239
 81-240
 81-241
 81-242
 81-243
 81-244

## APPEAL OF PORTSMOUTH SAVINGS BANK & a.
### (New Hampshire Board of Trust Company Incorporation)

January 18, 1983

2

*Maurice J. Murphy, Jr.*, of Portsmouth, by brief and orally, for Portsmouth Savings Bank.

*Wyman P. Boynton*, of Portsmouth, by brief and orally, for Portsmouth Co-operative Bank.

*Jeremy R. Waldron*, of Portsmouth, by brief and orally, for First National Bank of Portsmouth.

*Charles J. Griffin*, of Portsmouth, by brief and orally, for Piscataqua Savings Bank.

*William F. Harrington*, of Portsmouth, by brief for Portsmouth Trust Company.

*Gallagher, Callahan & Gartrell P.A.*, of Concord *(W. John Funk* on the brief and orally), for New Hampshire Savings Bank.

*Aeschliman & Tober*, of Portsmouth *(Stephen L. Tober* on the brief and orally), for Durham Trust Company.

BROCK, J. These appeals are brought pursuant to RSA 541:6 by five banks already doing business in Portsmouth from orders of the Board of Trust Company Incorporation granting the applications of the New Hampshire Savings Bank and Durham Trust Company to establish branch banks in Portsmouth under RSA chapter 384-B. Numerous procedural irregularities and errors of law are asserted to have been committed by the board. For the reasons that follow, we affirm the board's decisions to permit location of the branch banking facilities in Portsmouth.

The New Hampshire Savings Bank application was filed on July 26, 1979, and the Durham Trust Company application was filed on February 22, 1980. Shortly after each application was filed, "confidential" branch investigation reports were prepared by a bank examiner as required by RSA 384-B:2, III (Supp. 1979). After public hearings on the New Hampshire Savings Bank application, and a decision by the board to approve the application, the opposing banks appealed to this court. We remanded for further consideration because the board had denied the opposing banks access to the bank examiner's report and because the findings of the board were not

sufficiently detailed to warrant meaningful review. *See generally Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 423 A.2d 603 (1980).

On remand, the board furnished copies of the examiner's reports in both cases to the opposing banks. A public hearing was scheduled on both applications after the board had ruled on numerous motions filed by the opponents. While not required to do so by our remand, the board held a hearing in February 1981 at which the bank examiner who had prepared the reports was present. Counsel for all of the banks were permitted to examine and cross-examine him on all aspects of his reports, and confidential sections of the reports were disclosed. The opponent banks produced their own expert who testified against the applications, and at the close of the hearing all parties were given an opportunity to submit additional written comments. In May 1981, the board granted both applications, and these appeals ensued.

■ We consider first the due process and procedural errors asserted by the opponents. We have had several recent occasions to examine the requirements of due process in the conduct of administrative agency functions. *See, e.g., Appeal of Public Service Company of New Hampshire*, 122 N.H. 1062, 454 A.2d 435 (1982); *Appeal of Beyer*, 122 N.H. 934, 453 A.2d 834 (1982). These cases stand for the proposition that a basic requirement of due process is the right to be heard by an impartial board "at a meaningful time and in a meaningful manner." *Appeal of Portsmouth Trust Co.*, 120 N.H. at 758, 423 A.2d at 606.

■ Administrative due process is a flexible standard, and its requirements vary with the type of proceeding, the type of fact-finding, and the circumstances involved. *See Appeal of Public Service Company of New Hampshire*, 122 N.H. at 1073, 454 A.2d at 442. In the cases before us, the parties are successful financial institutions having professional management, knowledgeable directors, and experienced counsel. The ultimate issue in question is an economic one involving a determination of whether the Portsmouth area can accommodate an additional two banking facilities.

■ In *Appeal of Portsmouth Trust Company*, we observed that "[b]ecause the need for a full hearing is not an issue in this case, we assume without deciding that the opportunity to review the confidential material and to respond through written memoranda satisfies due process." 120 N.H. at 758, 423 A.2d at 606. The board not only made the examiner's reports available but also held another hearing, permitted cross-examination of the bank examiner who prepared the reports, and allowed additional witnesses to testify and

5

the record to be supplemented after the hearing. These steps satisfied the requirements of due process, and we find neither constitutional infirmity in them nor prejudice resulting to the opponents from their implementation.

█ Further, in spite of the opponents' arguments to the contrary, we find no reason to turn administrative hearings generally into "mini-trials" of the board's professional staff through the use of depositions, so long as parties are given the right to be heard and to examine such staff experts. *See Silverman v. Commodity Futures Trading Com'n*, 549 F.2d 28, 33 (7th Cir. 1977); *N.L.R.B. v. Valley Mold Co., Inc.*, 530 F.2d 693, 694–95 (6th Cir.), *cert. denied*, 429 U.S. 824 (1976); *N.L.R.B. v. Interboro Contractors, Inc.*, 432 F.2d 854, 857–58 (2d ⁀ 1970), *cert. denied*, 402 U.S. 915 (1971).

█ The opponents also argue that the board erred in not requiring the New Hampshire Savings Bank to disclose specifically its mortgages and deposits within the Portsmouth primary trade area. The existing deposit and mortgage base in a trade area is only one indicator of the need for a branch office and thus, alone, is not dispositive. In any event, other evidence presented on the applicants' needs for branch banks in Portsmouth was sufficient, and we find no error.

█ The opposing banks also assert that the board erred in limiting the scope of the remand to events and conditions existing at the time the examiner's reports were prepared. Were we to require otherwise, administrative proceedings would be extended indefinitely due to appeals, rehearings, and other post-hearing procedures, and a report would never have any value. *See Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 709, 422 A.2d 1304, 1306–07 (1980). No useful purpose would have been served by permitting the opponents to question the bank examiner concerning events and conditions not existing at the time his reports were prepared.

█ The testimony of an expert witness called by the opponents was found by the board to be of limited weight because his "knowledge of the area was incomplete, inaccurate, and largely based on stale information and a brief visit to the area . . . ." While this determination of the board is asserted as error, we have previously held that it is within the expertise of the board to accept or reject, in whole or in part, and to accord appropriate weight to expert testimony. *Appeal of National Advertising Company*, 122 N.H. 1058, 1060, 454 A.2d 446, 447 (1982); *see Appeal of Peirce*, 122 N.H. 762, 765, 451 A.2d 363, 365 (1982).

 It is argued that the evidence in support of the findings of the board was not sufficient to satisfy the requirements for granting the applications for branch banks in Portsmouth. The standard of review is clear: all findings of fact by the board are "deemed to be prima facie lawful and reasonable." RSA 541:13. In processing and acting upon applications for branch banks and reviewing the financial data before it, the board is required to "take into consideration" the following factors in determining whether to grant or deny an application:

"(a) the convenience, needs and welfare of the communities and the area concerned;
(b) the financial history and condition of the bank or banks concerned including the adequacy of its or their capital funds;
(c) its or their prospects;
(d) the character of the management; and
(e) whether or not the effect of granting the application would be to expand the size of the bank and extent of its business beyond limits consistent with adequate and sound banking, the public interest and the preservation of competition in the field of banking."

RSA 384-B:2, IV.

With regard to RSA 384-B:2, IV(a), relating to the "convenience, needs and welfare of the communities and the area concerned," the applicants showed that the communities and area to be served by the branches are active and growing and offer good business opportunities in the years to come. The evidence supported the board's conclusion that there is a present and continuing need for extensive involvement of banks to provide capital and services to individuals and business customers, and that the proposed branches not only will supplement services currently being provided by the existing banks, but also will add new services to meet the needs of the community and area. The bank examiner testified that the deposit of funds in banks outside the trade area was evidence of a need for new branch banks.

Regarding RSA 384-B:2, IV(b), relating to "the financial history and condition" of the applicants, the evidence presented clearly supported the board's finding that they are in a strong capital position and that no unreasonable risk will be posed to existing depositors through the expansion of their operations into Portsmouth.

As for the "prospects" of the proposed branches under RSA 384-B:2, IV(c), the evidence indicated that the prospects for the applicants' overall earnings are healthy and that the specific prospects of

the proposed branches point to success in the marketplace. In particular, given the historical rate of growth of the Portsmouth area with respect to deposits in banks, the evidence showed the projections for the success of the proposed branches to be reasonable.

With regard to RSA 384-B:2, IV(d), relating to the "character of the management," the evidence supported the board's finding that the character of the management is excellent.

Finally, with regard to RSA 384-B:2, IV(e), relating to "expand-[ing] the size" of an applicant and the "extent of its business" beyond reasonable limits, the evidence was clearly sufficient to support the board's finding that the proposed branches are consistent with sound banking, the public interest, and the preservation of competition in the field of banking.

Unlike the board's decision that was before us in *Appeal of Portsmouth Trust Company*, the board's opinion issued on remand and now before us is more than a simple restatement of the statutory factors. It would serve no purpose if we were to detail the numbers and statistics involved. We are satisfied that the board had sufficient evidence before it and made adequate findings. The board's approval of the applications is in accord with the constitutional mandate to protect "[f]ree and fair competition." N.H. CONST. pt. II, art. 83; *see Appeal of Omni Communications, Inc.*, 122 N.H. 860, 862, 451 A.2d 1289, 1290 (1982); *Valley Bank v. State*, 115 N.H. 151, 154, 335 A.2d 652, 653 (1975).

We find no merit to the opponents' other arguments, and accordingly we affirm the board's decision.

*Affirmed.*

All concurred.