Water Supply and Pollution Control Commission
No. 82-262
Solid Waste Management Board
No. 82-387

## APPEAL OF GERALD K. KELLEHER
### (New Hampshire Water Supply and Pollution Control Commission)

## APPEAL OF GERALD K. KELLEHER
### (New Hampshire Solid Waste Management Board)

December 16, 1983

276

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*James E. Higgins* on the brief and orally), for Gerald K. Kelleher.

*Gregory H. Smith*, attorney general (*Robert P. Cheney, Jr.*, attorney, on the brief and orally), for the New Hampshire Water Supply and Pollution Control Commission and for the New Hampshire Solid Waste Management Board.

PER CURIAM. We are presented with consolidated appeals from separate decisions of two State administrative agencies which determined that a site proposed by the petitioner, Gerald K. Kelleher, was unsuitable as a sanitary landfill. The petitioner argues that he was denied due process in the agencies' proceedings, that the findings of both agencies were insufficient to support their conclusions and that their decisions were against the clear preponderance of the evidence. For the reasons which follow, we vacate the decision of the New Hampshire Water Supply and Pollution Control Commission and remand; we affirm the decision of the New Hampshire Solid Waste Management Board.

In 1979, an associate of the petitioner contacted the New Hampshire Department of Health and Welfare, Bureau of Solid Waste Management, regarding the possibility of opening a sanitary landfill on 500 acres of land in Epping. A disagreement immediately arose as to whether State law required local approval of the proposed site. In the presence of counsel for the State agency and the petitioner, it was agreed that the bureau would review the suitabil-

ity of the site, regardless of what position might be taken by the town with respect to the proposed facility. The existence of this special agreement has caused some confusion because the record reveals that the parties themselves at various times have taken inconsistent and contradictory positions concerning whether the process before the bureau involved a formal permit application or a more limited site suitability review.

Consultants were employed by the petitioner, and site evaluation and design concept reports were submitted to the bureau. A set of operational plans was submitted as well. In February 1982, the petitioner received a joint letter from the bureau of solid waste management and the water supply and pollution control commission denying "[t]he application for a permit." The letter stated several reasons for the decision. The petitioner wrote to each agency setting forth five grounds for his objection to the decision and requesting a hearing.

The petitioner's request for a hearing was considered at the next regular meeting of the water supply and pollution control commission (commission) on March 10, 1982. The petitioner, his attorney, and one of his engineers were present. The commission took testimony from a member of its staff, from the director of the bureau of solid waste management, and from the petitioner's engineer. The testimony concerned not only the agencies' reasons for the unfavorable decision, but also the merits of the petitioner's claims that the decision was erroneous. Although each witness was questioned extensively by the commission, the petitioner and his counsel neither requested nor were offered an opportunity to cross-examine these witnesses. When the testimony was completed, the commission, treating the petitioner's request for a hearing as a motion for reconsideration of its prior decision, denied the motion based on its finding that the contentions made by Mr. Kelleher were without merit.

On March 31, 1982, the commission staff member who had testified at the March 10, 1982, meeting sent a memorandum to the commission stating that he had subsequently performed a more careful analysis, the results of which in effect eliminated one of the reasons for the original denial of petitioner's proposal.

On April 9, 1982, the petitioner requested that the commission reconsider its denial of the "motion for reconsideration." He asserted that the information in the memorandum called into question the soundness of the other grounds for the denial and requested an opportunity to inquire into these grounds and into the manner in which the commission conducted its entire review of the project.

On April 14, 1982, at its regularly scheduled meeting, the commission considered this request. The commission heard testimony

from its staff member regarding his most recent calculations. The petitioner alleges that he never received notice of and did not attend this meeting. On the record before us, while it is unclear whether the petitioner himself was present, it is clear that his counsel was not present. Further, the record clearly suggests that, at least in the mind of the commission chairman, there was doubt as to whether the March 10 meeting could actually be characterized as a hearing. In any event, at the April 14 meeting, the commission voted to supplement "the record of its hearing on March 10, 1982" by accepting its staff member's final calculations. It further found the remaining four claims set forth by the petitioner in his original request for a hearing to be without merit and denied his most recent request for reconsideration. On May 14, 1982, the commission issued its written findings and rulings.

Also on April 14, 1982, the bureau's solid waste management board (board) conducted its hearing on the "denial of a permit." The hearing was recessed and continued to May 7, 1982. The petitioner and his counsel were present at both sessions. The board heard testimony from its staff, from the staff member of the commission who had testified before the commission, from residents of Epping, and from three of the petitioner's experts. In the interim between the initiation of the hearing and its resumption on May 7, three board members visited the site and went over some of the plans with one of the petitioner's engineers. At the hearing before the board, the petitioner's counsel requested and was allowed the opportunity to cross-examine the witnesses. At the conclusion of the testimony, the board found that the site was unsuitable and voted to sustain the original "denial of suitability" by the bureau. The board's written decision of May 17, 1982, upholding the denial of February 9, listed three reasons for the board's belief that the site was unsuitable. The petitioner moved for a rehearing. This request was denied.

Subsequently, the petitioner appealed both agency decisions, pursuant to RSA 541:6, to this court.

The petitioner argues that he has been denied due process because of the alleged failure to provide proper notice, joint hearings, and an opportunity for cross-examination. Where, as here, the commission holds a "hearing" and takes testimony, it therefore must comport with the requirements of due process. "The fundamental requisite of due process is the right to be heard at a meaningful time and in a meaningful manner." *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 758, 423 A.2d 603, 606 (1980). Because of the confusion and uncertainty as revealed in the record as to whether what took place on March 10 could be considered a hearing, we are not con-

vinced that the petitioner was heard "in a meaningful manner." Accordingly, we vacate the May 14, 1982, decision of the commission and remand for further proceedings consistent with this opinion. Although it might be argued that a remand is academic because we are upholding the decision of the other agency involved in the joint determination, we are mindful that, if the commission should reach a different decision after further proceedings, the board could consider modifying or reversing its own determination.

█ Because the right to cross-examination of witnesses before an administrative agency is an issue in this case with respect to the hearing before the commission, and is likely to be raised again upon remand, we direct the attention of the parties to the recent amendment to the Administrative Procedure Act. Laws 1983, ch. 455. As expressed there, "[t]his act is intended to provide the essential minimum standards which must govern agency actions." Laws 1983, 455:1. Specifically, the amended act states: "A party may conduct cross-examinations required for a full and true disclosure of the facts." Laws 1983, 455:6 (codified at RSA 541-A:18, IV).

█ We next consider the petitioner's remaining due process arguments. While the commission's regulations provide for joint review of an application and joint issuance of a permit to operate a solid waste facility (see N.H. CODE OF ADM. RULES, Water Supply and Pollution Control Comm. section Ws 410.08(f) (1982)), we do not read this provision as requiring joint hearings of the commission and the board. Statutes governing each agency provide a means of reviewing unfavorable decisions. See RSA 149:14; RSA 149-M:9 (Supp. 1982). We conclude that this satisfies due process. Although the petitioner's argument that joint hearings would be more efficient in view of the joint application process may have some validity, we conclude that the decision to hold separate, rather than joint, hearings properly lies either with the agencies themselves in implementing their rules and regulations, or with the legislature.

█ The petitioner argues that he was given inadequate notice in that he was not advised as to which issues were of concern to the board and which issues were of concern to the commission. We find this argument to be without merit. The record indicates that the joint letter denying the "application for a permit" was in effect a joint determination that the site was unsuitable. It is reasonable to assume that all the expressed reasons for the denial, therefore, were of mutual concern to both agencies.

█ We also disagree with the petitioner's contention that the existence of a "perched watertable" on the site was a new issue, of

which he had no notice. The joint letter disapproving the site's suitability expressed the agencies' concerns with placing waste on this *"flat, wet site."* (Emphasis added.)

 Lastly, the petitioner objects to a remark made by the chief of the bureau of solid waste management, in his presentation of the history of the application to the commission, that "inflammatory" statements were made by the petitioner's associate. Assuming without deciding that such a remark was inappropriate, we find no basis in the record for suggesting that this remark in any way affected the outcome of the proceedings.

 The petitioner's final arguments are that the findings of the board were insufficient to support its conclusions and that its decision was against the clear preponderance of the evidence. We reject these arguments. Upon our reading of the record, we find that the board made basic findings which supported its decision that the site was unsuitable as a sanitary landfill and which, in turn, were supported by the record. *See Colburn v. Personnel Commission,* 118 N.H. 60, 65, 382 A.2d 907, 910 (1978). Furthermore, we are not convinced by a clear preponderance of the evidence that the board's decision was unjust or unreasonable. *See* RSA 541:13.

> *No. 82-262 vacated and remanded; No. 82-387 affirmed.*

SOUTER, J., did not sit.