Board of Trust Company Incorporation
No. 83-130

APPEAL OF ROCKINGHAM COUNTY TRUST COMPANY
(New Hampshire Board of Trust Company Incorporation)

September 27, 1984

█

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Jon S. Richardson* and *Daniel N. Gregoire* on the brief, and *Mr. Richardson* orally), for the appellant, Rockingham County Trust Company.

*Orr & Reno P.A.*, of Concord (*Charles F. Leahy* and *James E. Morris* on the brief, and *Mr. Leahy* orally), for the appellee, FMR Corporation.

SOUTER, J.   Representatives of FMR Corporation petitioned the Board of Trust Company Incorporation for approval to establish a banking corporation in Salem, to be known as Fidelity Bank and Trust Company. *See* RSA 392:5. Among those who objected was the present appellant. The board granted the petition. We affirm.

The applicant (FMR) is the parent of the Fidelity Group of companies, comprising the Fidelity Management and Research Company, FMR Investment Management Services, Inc., Fidelity Brokerage Services, Inc., Fidelity Management Trust Company (a Massachusetts bank), Fidelity Systems Company, and Fidelity Information Services, Inc. The Fidelity Management and Research Company serves as the investment advisor to and manager of the Fidelity Group of Mutual Funds and manages assets with a total worth of approximately $14.9 billion as of the time of the examiner's report in this proceeding. Other Fidelity companies provide discount brokerage services, investment management services, and record-keeping services to entities both inside and outside the Fidelity Group.

FMR sought approval to establish a wholly-owned subsidiary bank with full statutory powers, but it represented that in two respects the bank would not function as a commercial bank customarily would. It would not make commercial loans, lest FMR become a bank holding company under federal law, 12 U.S.C. § 1841(a) and (c), and be precluded from acting as underwriter for the Fidelity

Group of mutual funds. Nor would it make special efforts to market its services in the Salem area.

Instead, the bank would provide three principal services to a national market: (1) fiduciary and record-keeping services to corporate employee benefit plans; (2) custodial and fiduciary services to Keogh Plans and Individual Retirement Accounts; and (3) asset management services to employee benefit plans and individual depositors. The bank would provide the asset management services through what are often called "sweep accounts," or checking accounts with provision for automatic investment of excess balances. Such investment would be in either interest-bearing or equity instruments issued by a Fidelity Group subsidiary or obtained through an affiliated brokerage corporation. The national market would include customers in Salem, New Hampshire, but evidence before the board did not indicate that a substantial number of individuals in the Salem area would become depositors in the first three years of operation.

Following an investigation and hearing on this proposal, the board granted the petition after determining that "the public convenience and advantage [would] be promoted by the establishment of such corporation." RSA 392:5. This conclusion rested in turn on the board's favorable judgment under the five criteria of RSA 392:8: adequacy of capital structure, prospects for earnings, character and standing in the community of individuals to be associated with the bank, ability of proposed management, and "the convenience and needs of the community to be served by the proposed" bank. There is no issue in this appeal about the application of any of these criteria except the last.

■ In appealing the board's decision, the appellant has the burden either to demonstrate that the board committed an error of law or to prove by a clear preponderance of the evidence that the decision is unjust or unreasonable. RSA 541:13; *Appeal of Incorp's of Manchester Sav's Bank*, 120 N.H. 129, 412 A.2d 421 (1980). In an effort to carry this burden, the appellant raises two issues about the application of the fifth criterion under RSA 392:8, the convenience and needs of the community to be served by the proposed bank.

First, the appellant claims in effect that the board committed an error of law in finding that the convenience and needs of the community of Salem could be served by a bank that did not propose to make commercial loans or to seek to market full retail banking services in the community. The appellant characterizes the application as one for a "half bank" and argues that only a bank offering full services can satisfy the criterion of the community's convenience and need.

The appellant relies on our decision in *Appeal of Portsmouth Savings Bank,* 123 N.H. 1, 455 A.2d 1023 (1983), sustaining the board's finding that an applicant had satisfied the standard of convenience and needs of the community under RSA 384-B:2, IV(a). We considered it relevant that the board had found "a present and continuing need for extensive involvement of banks to provide capital and services to individuals and business customers" in the Portsmouth area. *Id.* at 6, 455 A.2d at 1026.

The appellant misreads the holding of that case, however. While a proposed bank's prospect for providing local capital is obviously a relevant consideration, it does not follow that it is a necessary condition for a favorable finding under the criterion of the community's convenience and need. Not only is there no express provision to that effect, but the statute itself appears to be inconsistent with the appellant's claim that approval must be conditioned on willingness to provide full services. RSA 392:9 recognizes that the board may find that public convenience would not be served by a bank with "all the powers and privileges" originally sought by the applicants, and in such cases it authorizes petitioners to seek approval for a corporation of more limited powers. We conclude, then, that the applicant's stated intention to exercise only limited banking powers did not preclude the board's approval.

The appellant's second claim of error looks not to the limits of the bank's services but to the market that the bank proposes to serve. The appellant argues that the board committed legal error in favorably judging convenience and need in relation to a national market rather than a local one. For that reason, the argument goes, the board erred in concluding that there was a factual basis for finding that the convenience and needs of the local community would be served by the proposed bank. This argument falls because it overlooks the board's finding that a bank intended to serve a national market could, and in this case would, serve the needs and convenience of the local market as well.

Both the evidence at the public hearing and the bank examiner's report supported the board's conclusion that "the package of financial services proposed by Fidelity is not currently available through banks in the Salem area." The board found this to be true even though "the Garn-St. Germain Act . . . authorized banks to provide . . . a functionally equivalent end product" to the so-called sweep account. It is clear that the board had an evidentiary basis to conclude "that Fidelity's proposed integration of banking services with high interest yields [would] serve a public need *while promoting competition in the Salem market.*" (Emphasis added.) *See Appeal of*

*Kingswood Trust & Savings Bank*, 123 N.H. 7, 11, 455 A.2d 1027, 1029 (1983); *Appeal of Portsmouth Savings Bank*, 123 N.H. 1, 6–7, 455 A.2d 1023, 1026–27 (1983); *Appeal of Incorp's of Manchester Sav's Bank*, 120 N.H. 129, 137, 412 A.2d 421, 426 (1980).

The board properly found that there was no incompatibility between the service to a national market and the provision of local benefits. Consequently, the appellant has not demonstrated that it was unlawful or unreasonable for the board to find that local convenience and need would be served by granting the application.

*Affirmed.*

DOUGLAS, J., did not sit; the others concurred.