Certificate of Need Review Board
No. 85-334

APPEAL OF CATHOLIC MEDICAL CENTER & a.
(New Hampshire Certificate of Need Review Board)

August 7, 1986

*Craig and Wenners*, of Manchester (*William H. Craig* on the brief, and *Daniel J. Harkinson* orally), for Catholic Medical Center & a.

*Brown and Nixon P.A.*, of Manchester (*Francis G. Murphy, Jr.*, on the brief and orally), and *Phillips, Gerstein, Holber, LaFlamme, Migliori & Barron*, of Haverhill, Massachusetts, also on the brief, for Rehab Associates of New England.

BROCK, J. This is an appeal from a decision of the New Hampshire Certificate of Need Review Board denying the plaintiffs, Catholic Medical Center & a., a rehearing of the board's decision granting Rehab Associates of New England a certificate of need for a rehabilitation facility. The only issues accepted on appeal concern the lack of formal notice afforded to certain of the plaintiffs regarding a reconsideration hearing. We affirm.

On August 1, 1984, Garvin Falls Road Corporation (Garvin), which is not a party to this appeal, filed a letter of intent with the New Hampshire Certificate of Need Review Board (the board) pursuant to RSA 151-C:7, IV (Supp. 1983) (Because this case arose before July 1, 1985, the 1983 version of RSA chapter 151-C applies, and our reference will be to that statute.). The letter expressed Garvin's desire to construct and operate a rehabilitation facility in New Hampshire. In response, Rehab Associates of New England (RANE) filed an application with the board for a certificate of need to establish a 100-bed rehabilitation facility in the Concord area. Shortly thereafter, Garvin, St. Joseph Hospital (St. Joseph), and Cheshire Medical Center (Cheshire) filed competing applications with the

board. In January 1985, following completion of RANE's application, the board published in two newspapers and sent to RANE and other "affected persons" notice of the fact that it had begun formal review of RANE's application. RSA 151-C: 7, XI (Supp. 1983).

Later, in March, notice of the public hearing on RANE's application was also published in two newspapers and sent to "affected persons" in accordance with RSA 151-C: 7, XI (Supp. 1983). The public hearing on the merits of the applications commenced on March 22, 1985, and reconvened on April 12. At the hearing, Charles Whittemore, President of Catholic Medical Center, made a statement in opposition to the applications of Garvin and RANE. Following the April 12 hearing, the board voted to deny Garvin and RANE, and to grant Cheshire and St. Joseph, certificates of need.

On April 26, RANE submitted a request to the board pursuant to RSA 151-C: 8, III(a) (Supp. 1983) for a reconsideration hearing to review the denial of its certificate of need and the award of certificates of need to St. Joseph and Cheshire. The board granted RANE's request for reconsideration of the denial of its own certificate of need. The board, however, voted not to reconsider the approval of certificates of need to St. Joseph and Cheshire. On May 15, RANE, Garvin, St. Joseph, and Cheshire were sent formal notification of the reconsideration hearing to be held on May 23.

Catholic Medical Center, Lakes Region General Hospital (Lakes Region), Concord Hospital, Frisbie Memorial Hospital (Frisbie Memorial), and Blue Cross/Blue Shield of New Hampshire were never formally notified of, nor did they participate in, the May 23rd reconsideration hearing. After the reconsideration hearing, the board reversed its prior decision and issued RANE a certificate of need for a rehabilitation facility in Allenstown. Thereafter, Catholic Medical Center, Cheshire, Concord Hospital, Lakes Region, Frisbie Memorial, and St. Joseph requested a public hearing to reconsider the board's May 23 decision to approve RANE's application for a certificate of need. RSA 151-C:8, III (Supp. 1983). This request for rehearing was denied by the board on June 20 as a result of a telephone poll of the board members. The plaintiffs then filed the present appeal.

The plaintiffs do not dispute the propriety of the actions of the board up to and including the public hearing held on March 22 and continued on April 12, 1985. The only issues on appeal are: (1) whether the certificate of need issued to RANE is invalid due to the board's failure to notify *all* the plaintiffs of the May 23, 1985 reconsideration hearing pursuant to RSA chapter 151-C (Supp. 1983) and the board's regulations; and (2) whether the board's failure to notify

all the plaintiffs of the reconsideration hearing violated the plaintiffs' rights to procedural due process.

■ Before considering the notice issues raised by the plaintiffs, we must first address the defendant's claim that the plaintiffs lack standing to bring this appeal because two of the plaintiffs, St. Joseph and Cheshire, had notice of the reconsideration hearing. St. Joseph and Cheshire originally joined in the appeal not to question lack of notice to them, but as entities "submitting an application for a certificate of need [who are] aggrieved [by] or dissatisfied with the decision of the state agency." RSA 151-C:9, I (Supp. 1983). Indeed, in their notice of appeal from the board's decision the plaintiffs raised at least eight separate issues, but we accepted for review only the two issues dealing with lack of notice. Although St. Joseph and Cheshire themselves are in no position to challenge RANE's certificate of need on the basis of lack of notice, their status as party plaintiffs does not affect the ability of the other plaintiffs to argue the notice issue in this court since we limited the scope of the appeal. Furthermore, the remaining plaintiffs could have raised the same issues in a petition for a writ of certiorari. *Appeal of Tamm*, 124 N.H. 107, 110, 469 A.2d 1291, 1293 (1983) (where plaintiff mistakenly appeals rather than petitions for certiorari, our practice permits consideration of his petition). Thus, we consider this appeal to be properly before us.

■ We note at the outset that the decision of the board will be upheld unless it is found to be "arbitrary or capricious or not made in compliance with applicable law." RSA 151-C:9 (Supp. 1983); *see Appeal of Lemire-Courville Associates*, 127 N.H. 21, 23–24, 499 A.2d 1328, 1330 (1985).

I. *Notice Provisions of RSA chapter 151-C*

The plaintiffs assert that the certificate of need issued to RANE on May 23, 1985, is invalid because of the board's failure to notify all of the plaintiffs of the reconsideration hearing pursuant to RSA chapter 151-C (Supp. 1983).

Among other things, RSA 151-C: 8 (Supp. 1983) creates a statutory scheme for reconsideration of decisions regarding certificates of need. RSA 151-C:8, III(a) (Supp. 1983) provides a mechanism by which "[a]ny person, for good cause shown, may request in writing a public hearing for purposes of reconsideration of a final decision of the [board]." *Id.* RSA 151-C:8, III(b) (Supp. 1983) requires that notification of a reconsideration hearing "be sent to the person requesting the hearing and to the persons proposing the new institutional

health service and shall be sent to others upon request." *Id*. RANE received notification of the reconsideration hearing as "the person requesting the hearing." In its request, RANE specifically asked for a review of the denial of its certificate of need in addition to a review of the granting of certificates of need to St. Joseph and Cheshire. As a result of their status as competing applicants named in the RANE reconsideration request, St. Joseph and Cheshire also received notice in writing of the date, time, and location of the reconsideration hearing. The remaining plaintiffs—Catholic Medical Center, Lakes Region, Concord Hospital, Frisbie Memorial, and Blue Cross/Blue Shield of New Hampshire—did not, however, receive notice of the reconsideration hearing.

The plaintiffs concede that, on its face, the language of RSA 151-C: 8, III(b) (Supp. 1983) does not require that the board provide them with formal notification of reconsideration hearings unless they request such notification in advance, and also that they made no such request of the board. But the plaintiffs argue that the statute should be read to require notice to all "affected persons." *See* RSA` 151-C:7, XI (Supp. 1983). They contend that the statute as written does not explain how an individual or entity who is not notified of a request for reconsideration can be expected to request notice of the reconsideration hearing. The plaintiffs also contend that a reconsideration hearing without notice to those who participated in the initial review hearing is tantamount to *ex parte* communications relating to the merits of an application for a certificate of need.

Upon review of the statute and the parties' arguments, we conclude that the statute did not require notice to the plaintiffs under the facts of this case. It is clear that the statute entitles the plaintiffs to notice of the reconsideration hearing *if* they make a written request for such notification. Requiring an interested individual or entity to request notice of additional proceedings is not unreasonable. The plaintiffs could have anticipated that a request for reconsideration would be made and could have requested formal written notification of all future proceedings at any stage prior to the reconsideration hearing.

 Furthermore, RSA 151-C:8, III(b) (Supp. 1983) is consistent with RSA 151-C:8, I (Supp. 1983), which deals with decisions regarding certificates of need. This section requires the board to send its decision "to the person proposing the new institutional health service and *to others upon request*." *Id*. (Emphasis added.) Thus, both provisions require the individual or entity desiring information to take the simple affirmative step of requesting that information. Therefore, absent such a request, the plaintiffs are not

entitled to formal written notification of the reconsideration hearing by virtue of RSA chapter 151-C.

II. *New Hampshire Division of Public Health Services Rule He-Cer 302*

The plaintiffs next assert that the board's notice procedures with respect to the reconsideration hearing failed to comply with its own rules and regulations.

█ In addition to complying with the statutory requirements of RSA chapter 151-C, the board must also comply with its own rules and regulations which implement the provisions of the statute. *Appeal of Behavior Science Institute,* 121 N.H. 928, 934–35, 436 A.2d 1329, 1332–33 (1981); *Appeal of the City of Nashua,* 121 N.H. 874, 876, 435 A.2d 1126, 1127–28 (1981).

New Hampshire Division of Public Health Services Rule ("Div. R.") He-Cer 302.01 sets forth the procedures governing hearings held pursuant to RSA 151-C:7, XIX. Procedures governing public hearings for reconsideration purposes, *see* RSA 151-C: 8, V (Supp. 1983), are set out in Div. R. He-Cer 302.02. More specifically, Div. R. He-Cer 302.02(b)(4) dictates that "[r]econsideration hearings shall follow the procedures set forth in Section 302.01 of these rules (Hearing Procedures)."

█ The plaintiffs contend that the reference in Div. R. He-Cer 302.02(b)(4) to "Section 302.01 of these rules (Hearing Procedures)" directs the reader to the general heading "PART He-Cer 302 Hearing Procedures." If such were the case, the plaintiffs would arguably be entitled to formal written notice of the reconsideration hearing pursuant to Div. R. He-Cer 302.01(b). To reach such a result, however, requires a strained reading of the rules. The more reasonable interpretation is that "Section 302.01 of these rules (Hearing Procedures)" refers to the more specific heading "He-Cer 302.01(d) Hearing Procedures." Because Div. R. He-Cer 302.01(d) does not specifically deal with the notice required for reconsideration hearings, RSA 151-C:8, III(b) applies in this regard. Thus, the board is not required to provide notice to entities such as the plaintiffs unless they request such notice. *See* RSA 151-C:8, III(b).

While Div. R. He-Cer 302.02(b)(4) would be less open to misinterpretation if it read "Section 302.01(d) of these rules (Hearing Procedures)," the absence of the "(d)" does not affect our construction of the rule. Thus, we hold that the board acted consistently with its own rules and that the plaintiffs are not entitled to the relief requested.

III. *Procedural Due Process*

Finally, the plaintiffs argue that the board's failure to notify all of the plaintiffs of the reconsideration hearing violated their constitutional right to procedural due process. U.S. CONST. amend. XIV, § 1; N.H. CONST. pt. I, art. 15.

■ We consider the plaintiffs' State constitutional argument first, as we must. *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983). A two-part analysis is utilized in determining whether challenged procedures violate the procedural due process requirement of the State Constitution. "First, it must be determined whether the challenged procedures concern a legally protected interest. Second, it must be determined whether the procedures afford the appropriate procedural safeguards." *Appeal of Plantier*, 126 N.H. 500, 505–06, 494 A.2d 270, 272 (1985); *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 756, 423 A.2d 603, 605 (1980).

■ For purposes of this constitutional analysis we assume, without deciding, that the plaintiffs have a property interest entitled to protection under the due process clause. The plaintiffs contend that the board was obligated to notify them of, and allow them to participate in, the reconsideration hearing under the recognized due process analysis. It is important to note at this juncture that "[a]dministrative due process is a flexible standard, and its requirements vary with the type of proceeding, the type of fact-finding, and the circumstances involved." *Appeal of Portsmouth Savings Bank*, 123 N.H. 1, 4, 455 A.2d 1023, 1025 (1983); *see also Appeal of Public Serv. Co. of N.H.*, 122 N.H. 1062, 1073, 454 A.2d 435, 442 (1982).

■ Under the circumstances of this case, we conclude that the plaintiffs' right to procedural due process was not violated. The hearing and notification procedures for review of certificate of need applications are specifically outlined in RSA chapter 151-C. This statute is further augmented and explicated by the Public Health Services Rules He-Cer 302, *et seq.* Through the statute and the rules, the plaintiffs were afforded a mechanism by which they could have received formal notice and an opportunity to be heard. RSA 151-C:8, III(b) (Supp. 1983) requires the board to provide individuals or entities in the plaintiffs' position with notice only if they make a request for notice of decisions and additional proceedings in advance. The plaintiffs were aware, or should have been aware, that simply by requesting the board to apprise them of all future proceedings at the start of this administrative action they would have been entitled to notice of the reconsideration hearing.

Because federal law is no more advantageous to the plaintiffs, we similarly find no basis for relief under the Constitution of the United States. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Finding compliance with statutory and regulatory requirements and no violation of procedural due process, we conclude that the board properly denied the plaintiffs' request for rehearing and that the certificate of need issued to RANE is valid.

*Affirmed.*

KING, C.J., and SOUTER, J., did not sit; the others concurred.